## ITTNER BRICK COMPANY V. RUDOLPH KILLIAN.

FILED FEBRUARY 17, 1903.   No. 12,253.

Commissioner's opinion, Department No. 1.

1. **Allegata et Probata:** VARIANCE. A variance between *allegata et probata* will not be held to be prejudicial, requiring a reversal of the judgment, where it appears that the party complaining was not actually misled or surprised to his disadvantage.

2. **Negligence:** YOUTH AND INEXPERIENCE: INSTRUCTION. Youth and inexperience being inherent, and not the result of carelessness or negligence, it is not error to state, in an instruction in an action for personal injuries, that if plaintiff, "because of his youth and inexperience, failed to appreciate the danger," without adding, "or by the use of reasonable care on his part could or would not have known it."

3. ———: ———: ———: SERVANT: LIABILITY OF MASTER. If a servant, on account of his youth, lack of prudence and understanding, and because of the want of proper instruction, fails properly to appreciate the risks involved in certain labor which he is commanded by the master to perform, and is injured, the master will be liable.

4. **Child of Fourteen:** PRUDENCE AND UNDERSTANDING: PRESUMPTION. There is no presumption that a child of fourteen years has as much prudence and understanding as an adult, and where such child has been injured while engaged in dangerous work which he has been commanded to do, it is for the jury to say, considering his age and experience, whether he assumed the risks of his employment.

5. **Servant:** COMMAND OF MASTER: CONTRIBUTORY NEGLIGENCE. A servant can not undertake the performance of a service, even in obedience to the command of the master, where the danger is so obvious that injury would be inevitable, and if he does so, he will be held guilty of contributory negligence.

6. ———: ———: ———: BOY OF FOURTEEN. Where a boy fourteen years old undertakes dangerous work in obedience to the command of the master, the law will not deny him relief on the ground of contributory negligence, unless the danger was so manifest and glaring that it must have been known to one of his age and experience that he could not do it without injury.

7. ———: ———: ———: ———: OILING BRICK-MACHINE: QUESTION FOR JURY. A servant, a child of fourteen years, was ordered by his master to assist in cleaning and oiling a brick ma-

Syllabus by court; catch-words by editor.

chine while the same was in motion by steam. The work was highly dangerous, but could be accomplished without injury. *Held,* That the question whether the servant was guilty of contributory negligence was properly left to the jury.

8. **Instructions.** Instructions examined, and *held* not erroneously given.

ERROR from the district court for Douglas county. Action in behalf of a minor by his next friend, against his master, to recover damages for a personal injury. Plaintiff prayed for judgment in the sum of $10,000. Tried below before SLABAUGH, J. Verdict for $3,000. Judgment upon the verdict and for costs. *Affirmed.*

*John C. Cowin,* for plaintiff in error.

*Phil E. Winter, Charles E. Winter* and *Carl E. Herring, contra.*

KIRKPATRICK, C.

This is an action brought in the district court for Douglas county by Rudolph Killian, defendant in error, by his father, as next friend, against the Ittner Brick Company, plaintiff in error, to recover damages for personal injuries sustained by defendant in error while in the employ of plaintiff in error assisting in the operation of a pressed brick machine. The petition alleged, in substance, that plantiff was a minor, fourteen years old; that he was employed by defendant company to take brick from the brick-machine, which, it was alleged, was not a dangerous employment; that defendant company knew the youth and inexperience of plaintiff, and wrongfully required plaintiff to perform more dangerous service than that for which he had been employed, to wit, cleaning and greasing the brick-machne, and that defendant company wholly failed to inform plaintiff of the dangerous nature of the machinery, or to instruct him in the risks of the employment; that while plaintiff was assisting in the cleaning and greasing of the brick-machine, his right hand was caught in the machine, and in the cogs operating the same; that his

hand and arm were drawn into the cogs and crushed and mangled so that it was necessary at once to amputate his arm, and, although proper care was taken of the arm, a second amputation was necessary; that plaintiff had been damaged in the sum of $10,000. The answer admitted the employment of plaintiff, and alleged that he was employed to do general work in and around the brick-yard of defendant; and alleged that plaintiff was fully instructed regarding the dangers of the employment; that he had been employed in working in the brick-yard the previous year, that he was expressly forbidden to clean and grease the machine while it was in motion; admitted that plaintiff was injured by getting his hand crushed while it was in the brick-moulds cleaning and greasing the same; that plaintiff knew of the danger in cleaning the machine; that the dangerous character of the machinery was open and obvious to any person; and that plaintiff was guilty of negligence contributing to the injury. A reply was filed, denying generally new matter contained in the answer. Trial to a jury resulted in a verdict for defendant in error.

It is disclosed by the record that in the year 1898, defendant in error, who was then thirteen years old, was employed in the brick-yard of defendant in error, and worked there during the brick-making season. The greater portion of the time he was employed in removing the brick from the machine and placing them on a cart to be hauled away to the kiln. In the following year he was again employed, and during that season, and up to the date of the injury, which occurred August 21, 1899, his employment consisted in standing in front of a circular revolving table in which were certain brick-moulds, and taking from the table, alternating with another boy, who stood by his side, the moulded bricks from the table after they emerged from the moulds. The front part of the revolving table was open, but at the sides and back the table was covered, the table as it revolved passing under a heavy iron frame. While passing under this frame, the moulds in the table were filled with clay from a hopper situated

above the back part of the machine, and a plunger, which was at the bottom of the machine, was forced upwards by machinery so as to press the brick in shape. As the revolving table brought the brick from under the frame or cover, the plunger in the bottom of the table was further forced upward to a height sufficient to raise the bottom of the brick a little above the top of the table. The brick were then taken off by the boys working in front of the table, placed upon carts and hauled away. After quitting work for the day, it was necessary to clean and oil the plungers and other parts of the moulds in the table. It had been customary, while this was being done, to shut off the steam, and cause the table to revolve sufficiently to permit of cleaning the moulds in rotation by moving the belt by hand. As the moulds passed out from under the iron frame the dirt was scraped out, and they were greased and oiled, using waste for the purpose, the plungers having been previously removed. About quitting time on the day the injury occurred, Ittner, who was general manager for plaintiff in error, and who was personally in charge of the work, told the boys, among whom was defendant in error, to hurry up and clean the machine. He thereupon went away, and defendant in error, with one or two other boys, began cleaning the machine, which was being run by steam, although it had been slowed down to permit of cleaning. While defendant in error had one of his hands in a mould of the revolving table, greasing the sides of the mould, his arm between his hand and his elbow was caught by coming in contact with the sides of the iron frame as the mould in which he had his hand passed under the frame. The arm was so crushed and mangled that amputation was immediately necessary, which was done, and later a second amputation occurred. Defendant in error had previously on one occasion assisted in cleaning the machine while it was being run slowly by steam power, although it appears that it had been customary for one of the machinists to clean the moulds and plungers, while the boys, defendant in error included, cleaned up around the machine at the close of work.

On the trial of the cause plaintiff in error introduced no testimony, but at the close of the testimony offered by defendant in error asked the court to instruct the jury to bring in a verdict for it, which request was denied, and this is the first error assigned. In support of this contention it is urged that the allegations of the petition and the proof submitted vary materially, in that the petition charged as negligence on the part of defendant below failure to instruct defendant in error as to the dangers of the work, whereas the proof shows that the danger was open and manifest, and was well known to defendant in error; and it is said that under this state of facts he assumed the risks of the employment. It is further urged that the proof shows that defendant in error was negligent and failed to exercise due care, and for that reason could not recover. The variance between *allegata et probata* relied on is that it is pleaded that defendant in error was injured by the cogs in the brick-machine, and that the testimony fails to show the existence of any cog-wheels near the place of the injury, or that defendant in error was injured in the way claimed. The allegation upon which this contention is based is in part as follows: "And in consequence thereof on Monday, August 21, 1899, this plaintiff, while so engaged as aforesaid, according to defendant's command and direction, in cleaning out and oiling said grooves and machinery, and in the exercise of due care, had his right hand caught in said machine and drawn into and between the said cog-wheels, and mashed and mangled and torn, hand and forearm to the elbow, to such an extent that amputation was immediately necessary and was performed at once," etc.

Plaintiff in error, in answer to the petition, alleged as follows: "Defendant further alleges that the said Rudolph Killian well understood the said work, and was instructed and properly cautioned as to the performance of all said services, and was strictly forbidden to oil or clean said grooves or moulds of said machine while the same was in motion, and was told not to attempt to oil or

44

clean the said grooves or moulds when the motive power was attached to said machine, and that the said Rudolph Killian fully understood that he was not to oil or clean the machine while the same was in motion, and knew of all the dangers connected with the cleaning and oiling or attempting to clean and oil the said moulds or grooves while the machine was in motion.   *   *   *   Defendant admits that about August 21, 1899, the said Killian was injured by having his right hand caught in one of said moulds, but in this behalf alleges the fact to be that said Rudolph Killian was clearly negligent and reckless, and not while in the performance of any service or duty required of him, or which he was directed to perform, thrust his hand in one of said moulds while the machine was in motion."

Upon the trial of the cause no objection seems to have been urged on the ground that there was a variance between *allegata et probata.* We think the test is, was plaintiff in error surprised or misled by reason of the allegations in the petition? Code of Civil Procedure, sec. 138.* The petition charges that the cleaning of the machine was highly dangerous; that defendant well knew of its dangers; that plaintiff, on account of his youth and inexperience, was unable properly to appreciate the dangers of the work; that defendant wrongfully neglected to instruct him as to the dangers; that it was the duty of defendant, knowing the youth and inexperience of plaintiff, to warn him, and to protect him from risks which, by reason of his youth and inexperience, he could not properly appreciate; and that because of this failure of defendant, plaintiff, while cleaning and oiling the machine, according to the direction and command of the defendant, caught his right hand in the machinery, "the hand being drawn into and between the said cog-wheels," and thus injured. The answer expressly pleaded that plaintiff was forbidden to oil the machine while the motive power was

---

* In Cobbey's Annotated Code, a valuable note follows this section. —W. F. B.

attached, and that he was injured by reason of his own negligence. We think, that, construing the pleadings liberally, as we are bound to do, the issue was whether defendant in error was injured as a consequence of cleaning and oiling the machine while acting in obedience to the command and direction of the master; and whether, by reason of his age, lack of prudence, and inexperience, the danger of the task was such that he did or did not assume the risks incident thereto. The fact that in addition to other allegations, it is alleged that there were cog-wheels beneath the moulds, and that the hand was drawn into and between the cog-wheels, the answer admitting that the hand was caught in one of the moulds, but that defendant in error was at the time engaged in performing his task in a manner forbidden by the defendant, can not be material, unless it actually misled the defendant below to its prejudice in maintaining its defense upon the merits. We are quite confident that no such prejudice resulted, and it therefore follows that the first contention of plaintiff in error must be overruled.

The next contention relates to instructions Nos. 5, 6, 8, 10 and 14, given by the court on its own motion, these instructions being assailed for reasons which will be considered.

It is not necessary to discuss the complaint made of instruction No. 5, inasmuch as it is based upon the theory that there is a substantial variance between *allegata et probata,* and may, therefore, be deemed already disposed of.

Instruction No. 6 is as follows: "Under the law when one is known to be inexperienced, who is put to work upon a machine which is dangerous to operate unless with care and by one who is familiar with its structure, it is the duty of the employer to instruct such person so that he will fully understand and appreciate the danger of his employment and the necessity for the exercise of due care therein. Therefore, if you find from the evidence that the employment of plaintiff at the time of his injury was

dangerous, and that plaintiff was known to be inexperienced, and that defendant knew the peril or should have known the peril to which plaintiff would be exposed, and did not give him sufficient instruction therein, and if he from youth or inexperience failed to appreciate the danger, and was injured in consequence thereof, and because of defendant's negligence, and the plaintiff was not guilty of contributory negligence, then the defendant is responsible."

With reference to this instruction, it is said that before a defendant can be held liable for failure to instruct, it must be shown that plaintiff—taking, for instance, the case of a minor—from his youth and inexperience, did not know and appreciate the danger, or "by the exercise of reasonable care on his part would or could not have known it."

It may be admitted that, ordinarily, an employee will be charged with notice, not only of danger known to him, but of dangers which, by the exercise of reasonable care, he might have known. But we think the hypothesis of youth and inexperience precludes the capacity of exercising such care. If plaintiff did not know of the dangers because of his youth and inexperience, how can he be required to ascertain their existence by the use of a capacity which he did not possess? Youth and inexperience are inherent—as, for instance, blindness or deafness—and are inconsistent with the exercise of what would be reasonable care in adult persons. It could not well be said that if plaintiff, by reason of his deafness, could not hear the machinery, or by the exercise of reasonable care on his part could not have heard it, he should have exercised reasonable care in that regard; because if he is deaf, reasonable care in hearing could not be required of him. And so here, if by reason of youth and inexperience he failed to appreciate the danger, it would be idle to tell the jury to go further, and inquire whether, nothwithstanding he failed to appreciate the danger because of his youth and inexperience, he could not have exercised reasonable care and overcome his youth and inexperience.

This construction of the law would be unwarranted, and we think the instruction, in regard to the contention urged, is without error.

Instruction No. 8 reads as follows: "It is the duty of every master to conduct his business with reasonable care and prudence so as not negligently or carelessly to subject his servants to any danger not ordinarily incident to or connected with his employment, and it is the duty of the master to provide his servant with a reasonably safe working place, and with reasonably safe machinery with which to work, and if the master fails in this regard, and the servant is injured thereby and for such reason, then the master is liable in damages for such injury, unless the negligence or want of ordinary care of plaintiff contributed to his injury."·

The two objections urged against this instruction are, first, that it is wholly inapplicable to the issues; and second, that it is wrong as a proposition of law, because in it the master is held to more than the exercise of ordinary care in furnishing a reasonably safe place for the servant to work, in effect making the master the insurer.

It is disclosed by the testimony, that at the time Ittner, manager for plaintiff in error, told the boys, including defendant in error, to hurry up and clean the brick-machine, it was running by steam-power. The manager, after giving this order, immediately went away and was not present when the injury was received. It is further shown, and may be said to be apparent to any one, that the work of cleaning and oiling the moulds of the machine while the motive power was attached was highly dangerous. It had been customary to detach the steam-power from the machine before cleaning was undertaken, but on one or two occasions this had not been done. Horace Ittner was not called as a witness, and there was no testimony by plaintiff in error. From the evidence in the record we think it is fairly inferable that the manager in charge of the works understood that the machine was being cleaned while the motive power was attached. We think plaintiff

in error must be held to know that this was highly dangerous. When the extreme youth and presumptive inexperience of defendant in error are taken into consideration, there can be no doubt that plaintiff in error owed the affirmative duty to its employees, charged with the task of cleaning and oiling the machine, to see that the motive power was detached, and to have it run by hand. The duty of the master to exercise care in having reasonably safe machinery for the servant was in this regard violated by plaintiff in error, and we are of opinion that the instruction quoted, while it might have been modified to make it more clearly applicable, can not be held to have been so inapplicable as to be prejudicially erroneous.

As to the second objection urged, going to the correctness of the abstract proposition stated, viz., that it states without qualification that the duty rests upon the master to provide a reasonably safe place, we think that when read as a whole, the instruction could not have misled the jury. As a general proposition, it is therein said to be the duty of every master to conduct his business with reasonable care and prudence, so as not negligently or carelessly to subject his servants to any danger not incident to the employment; and this being the requirement of the law, therefore it is manifestly his duty—that is, a specific duty under the general "duty to conduct his business with reasonable care and prudence to provide his servant with a reasonably safe working place," etc. The instruction may be thus read, and we think it was so understood by the jury.

Instruction No. 10 reads in part as follows: "The same degree of care and prudence in avoiding danger is not required from a child with less prudence, discretion and understanding as from an adult, if you find from the evidence that plaintiff possessed less prudence, discretion and understanding than an adult." It is said that this instruction is erroneous because it ignores the principle that it is not the mere fact of minority which entitles a child to immunity, but the immaturity which is apt to be,

but which is not necessarily, a concomitant of minority. The observation accords with experience that a youth less than twenty-one years of age may have much more prudence and discretion than a man of more than twenty-one years. But in the case at bar, defendant in error was a child of little more than fourteen years. There was no proof that he was possessed of more or less prudence and understanding than the average boy of that age. He testified at the trial, and the jury saw and heard him, and were clearly at liberty to say whether, taking into consideration his age and experience, he could be held to the same degree of care and prudence as an adult. The master is liable if the servant failed fully to understand and appreciate the risk on account of his infancy. *Omaha Bottling Co. v. Theiler,* 59 Nebr., 257, 80 Am. St. Rep., 673.

It is also said that the instruction is objectionable because it virtually tells the jury that a child possesses less prudence and understanding than an adult. We do not think so. The instruction states with manifest correctness that the same degree of care is not required of a child who actually possesses less discretion, prudence and understanding than an adult, and that this principle would apply to defendant in error if they found from the evidence that he, as a child, did possess less prudence, discretion and understanding than an adult.

It is suggested that there is no proof tending to show that defendant in error was limited in his mental capacity, or that he was feeble-minded. But this does not make the instruction inapplicable. We are of opinion that there is no presumption that a child fourteen years of age has as much discretion, prudence and understanding as an adult. It was not necessary for defendant to prove that he had less than the average child of fourteen. It was clearly within the right of the jury to say from the knowledge they had that defendant in error possessed less discretion and understanding than an adult, and to conclude therefrom that, as a matter of law, he could not be held to the same degree of care and prudence.

It is suggested that the testimony of defendant in error shows that he understood and appreciated the danger as well as any adult could, with respect to the manner in which he did get hurt. On cross-examination, defendant in error, in answer to the question, "You knew that if you did not take it [his hand] out [of the mould] it would get caught?" said, "Yes, sir." And, further, "You understood that perfectly well, just as well as you know that if you put your finger in the fire it will be burned." Answer: "Yes, sir." We can not see the significance of this testimony, which is emphasized by counsel. In all probability a child of eight or ten years would have given the same answers to these questions. Grant that defendant in error knew perfectly well that if his hand were allowed to remain in one of the moulds of the revolving table too long, it would get caught, the question still remains, did he possess sufficient prudence, discretion and understanding properly to appreciate the extraordinary danger of inserting his hand in the moulds while they were slowly but steadily carrying it to certain destruction? We can not discover that there is any error in this instruction.

Instruction No. 11 states as a matter of law that a servant assumes the ordinary risks arising from dangerous machinery when they are known to him, or would be apparent to persons of his experience and understanding, if he voluntarily entered upon the work and continued therein without objection; and it is then said: "But when a servant in obedience to the requirements of the master incurs the risk of machinery, which, although dangerous, is not of such a character that it may not be safely used by the use of reasonable skill and care on the part of such servant, considering his age, experience and understanding, then, as a matter of law, the servant does not necessarily assume the risk of danger arising from the use of such machinery." It is urged that this instruction incorrectly states the rule of assumed risk. Read as a whole, we think the court therein states two propositions: (a) The servant assumes the ordinary risks known to him

when he voluntarily enters upon the work, and continues therein without objection; but (*b*) the risk of using dangerous machinery is not necessarily assumed by the servant as a matter of law, if the servant incurs the risk in obedience to the command of the master, and if the machine is not so glaringly or obviously dangerous that it may not be safely used by the use of reasonable care and skill; and this latter question is to be determined by considering the age, experience and understanding of the servant. Under this instruction, the jury would be required to find, first, that defendant in error incurred the risk in obedience to the requirements of the master; and second, although the machinery was dangerous, yet, considering the age, experience and understanding of defendant in error, it was nevertheless not of such a character that it might not have been safely used in the exercise of reasonable care and skill. This instruction is, doubtless, correct. The servant can not fly in the face of the manifest and inevitable danger—danger that can not be avoided, even by the exercise of ordinary care and skill— even though he be commanded by his master to incur the risk; and if he does so he can not recover. *Shortel v. City of St. Joseph,* 104 Mo., 114, 24 Am. St. Rep., 317. But we are clearly convinced, that defendant in error, a boy fourteen years of age, can not, as a matter of law, be said necessarily to have assumed the risk involved in the work in which he was injured, if he was commanded by plaintiff in error to do it in the manner in which he undertook its performance. It was not impossible to do it in that manner. It is possible that even he, using reasonable skill and care, could have done the work without injury. And this being true, if on August 21, 1899, Rudolph Killian was commanded to clean and oil the moulds of the machine, and it was the intention and understanding of both master and servant that they should be cleaned and oiled while the machine was in motion, then Killian did not necessarily assume the risk of the work as a matter of law, and the question was properly left to the **jury**. *Dorsey v.*

*Phillips & Colby Construction Co.,* 42 Wis., 583. "The servant occupies a position of subordination, and may rely upon the skill and knowledge of his master, and is not free to act on his own suspicions of danger." *Iron Ship Building Works v. Nuttall,* 119 Pa., 149. "If, therefore, the master orders the servant into a place of danger, and the servant is injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger is so glaring that a reasonably prudent man would not have entered into it. *Shortel v. City of St. Joseph,* 104 Mo., 114, 120. We think this instruction is free from error.

Instruction No. 12, regarding which substantially the same complaint is made, need not be further considered, except as to the contention that there was error in submitting the question whether the manager of plaintiff in error ordered defendant in error to assist in cleaning and oiling the machine while it was running by steam, as the evidence does not warrant the submission of such issue. We think the evidence warrants a reasonable inference that when the order to hurry up and clean the machine was given, it was understood that the machine was to be cleaned while it was running by steam.

Instruction No. 14, laying the rule for the measurement of damages, is complained of, because it does not limit the recovery to the period within which defendant in error would be entitled to his own earnings. It is said that defendant in error testified that all of his earnings were received by his father. We do not so understand his testimony. He said that he was not in a hurry to get his money because his father received it for him, and would let him have it if he wanted it. The instruction is not vulnerable to the objection urged.

It is finally urged that there was error in the action of the trial court in recalling the jury in the absence of plaintiff in error or its counsel, and orally stating to the jury a modification of instruction No. 13. This instruction originally told the jury that if defendant in error

understood that the machine should stand still when being cleaned, and was so instructed, plaintiff in error would not be liable. As modified, they were told that if he so understood or was so instructed, plaintiff in error would not be liable. This modification was manifestly in favor of plaintiff in error, and its failure to except thereto could not have been prejudicial.

We have examined the record carefully, and are convinced that the proceedings in the trial court were without error. It is, therefore, recommended that the judgment be affirmed.

HASTINGS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Variance Between Pleading and Proof.*—Where the insured property is situated on the northwest quarter of a certain section of land, instead of the northeast quarter thereof, as described in the policy, the variance is not material, and the insured is not compelled, in case of loss, to seek reformation of the contract in equity before he can recover in a court of law. Opinion by REESE, C. J. *State Ins. Co. v. Schreck*, 27 Nebr., 527, 20 Am. St. Rep., 696.—W. F. B.

