CUDAHY PACKING COMPANY V. ROCH WESOLOWSKI.

FILED FEBRUARY 22, 1906. No. 14,150.

1. Trial: HARMLESS ERROR. Action of the trial court in the admission of evidence examined, and *held* not prejudicial.

2. Master and Servant. The master does not guarantee the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such a place.

3. **Contributory Negligence.** When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is also dangerous and from which injury results, is not contributory negligence such as will prevent him from recovering for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make. *Lincoln Rapid Transit Co. v. Nichols*, 37 Neb. 332, followed and approved.

4. **Instructions** examined, and *held* not prejudicial.

ERROR to the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Greene, Breckinridge & Kinsler,* for plaintiff in error.

*James H. Van Dusen,* contra.

OLDHAM, C.

This was an action for personal injuries sustained by the plaintiff in the court below while in the employ of the defendant packing company. The facts underlying the controversy are that the plaintiff was an employee of the company in the meat canning department of its packing house. His duties were to wheel on a truck cans of meat from the canning room to the cooking room and place them in retorts where they might be cooked. There were two rows of these retorts running north and south in the cooking room, with one kettle and five retorts in each row. The retorts were about five feet in height and three feet in diameter, and stood two feet apart in the rows, the rows being two and one-half feet apart. There were steam pipes leading into the room, and between the two rows of retorts was a pipe leading into each one of the retorts, which supplied the steam for cooking the meat. The retorts, when filled with cans of meat, were covered with metallic tops, fastened to the floor with screws. In the cooking room, west of the rows of retorts and running parallel with them, was a passage way about ten feet wide along which the employees could wheel the trucks holding the cans of meat on entering or leaving the room. At the

time of the injury plaintiff had entered the cooking room with a truck-load of meat cans and had unloaded them into the third retort from the south end in the row on the west side, marked "Retort No. 6" in the diagram admitted in evidence. Two feet south of this retort was retort No. 4, and two and one-half feet east of No. 4 stood retort No. 3, as marked on the diagram. When plaintiff had filled retort No. 6 with cans of meat, he was standing on the southeast side of the retort, fastening the top upon it with a screw, when suddenly the bonnet or valve blew out of the steam pipe between retorts No. 3 and No. 4, and, according to plaintiff's testimony, about three feet from plaintiff, and behind him. When the bonnet was blown out of the pipe, the steam escaped with considerable noise and filled the room with vapor, and plaintiff, acting on the impulse of the moment and fearing injury from the escaping steam, ran forward and fell over the handle of the truck, which had been left near the retort, and sustained serious injuries from the fall, for which he sought to recover damages from the defendant.

The petition, after carefully reciting each fact connected with the injury, alleged that the plaintiff was "injured through the carelessness and negligence of defendant in failing to furnish him a safe place to work, * * * in allowing to be used and remain in said pipe an old and worn out stopcock, and steam shut-off with defective threads thereon, so worn and destroyed as to make the same unable to withstand the pressure of steam within the pipe, and in placing a higher pressure and greater quantity of steam in said pipe than the same was made or intended to withstand or able to hold, all of which facts were well known to the defendant, * * * and all of such facts this plaintiff had no knowledge or information of prior to said injury." In support of this allegation of negligence plaintiff, over the objections of defendant, introduced testimony tending to show that a very short time before the accident the attention of the defendant's superintendent of the cooking and canning rooms was

called to the fact that the steam pipe in controversy was defective; that a plumber, called for that purpose, examined the pipe and called the attention of the superintendent to the fact that the threads on the screw of the bonnet would not resist the pressure of the steam within the pipe; that, with this knowledge, the superintendent, in substance, told the plumber to replace the defective bonnet in the pipe for the rest of the day, as he did not wish to lose the time necessary to get a new bonnet until the next morning, when it could be put in without delaying the work.

The answer to the petition was in effect a general denial, a plea of contributory negligence, and an allegation that, if steam was negligently permitted to escape from the pipe, such negligence was that of a fellow sevant, and not that of the defendant.   On issues thus joined there was a trial to the court and jury, verdict for plaintiff, judgment on the verdict; and to reverse this judgment defendant brings error to this court.

There are four allegations of error called to our attention in defendant's brief, and these we will consider in the order assigned.

The first allegation is that "the plaintiff was permitted to prove that he was frightened by the noise of the escaping steam, whereas the claim in the petition is that it was so hot and in such volume as to put his life in jeopardy." This allegation of error in the face of the petition and the very gist of plaintiff's right, if he had any, to recover for his injury might with propriety be passed over as purely specious.   Plaintiff's petition, as before stated, had set out with great care and precision each ultimate fact connected with the injury, and, as accounting for plaintiff's action in running forward and falling over the handle of the truck, it had alleged that the discharge of steam from the pipe behind him had put his life in jeopardy, and that the steam had filled the room with mist, so that he could not see the objects around him.   It is basic that, having alleged the ultimate facts on which a recovery was predi-

cated, he was entitled to prove the logical and reasonable results arising from such facts; and it seems to us that, having alleged and introduced competent evidence to prove that a large volume of steam was suddenly and violently discharged from the pipe by the blowing out of the bonnet only three feet behind him, the fact that he was frightened by the noise of this explosion was a logical result of such occurrence.

The second allegation of error is as to "the incompetent and irrelevant testimony regarding the conversation between the steam-fitter and the superintendent." We have already set out the purport of this conversation in our statement of the proof offered by the plaintiff. With reference to this allegation it is said in defendant's brief: "The point is that upon plaintiff's theory of this case it makes no difference what the steam-fitter said to the superintendent of this department or what the superintendent said to the steam-fitter about the valve, and that conversation could only be introduced to establish a fact over which there was no dispute, viz., that the valve which blew out was defective." The argument against this contention is that it never was admitted by the defendant that the valve or bonnet was defective, although it is true no evidence was introduced by the defendant in denial of such fact. And again, the answer had pleaded that, if the pipe was defective, the negligence in permitting such defect was that of a fellow servant, and not of defendant. Consequently, the testimony offered was very material to plaintiff's right of recovery for the purpose of showing actual knowledge of the defective condition of the valve by the vice-principal of defendant, who was not a fellow servant of the plaintiff.

The third allegation called to our attention in the brief is that "the testimony discloses no duty from the defendant packing company, the violation of which caused his (plaintiff's) fright and injury." It is true, as said in *Harley v. Buffalo Car. Mfg. Co.*, 142 N. Y. 31, "the master does not guarantee the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is

found simply to use reasonable care and prudence in providing such a place." If the steam had escaped because of a latent defect in the bonnet, or from any other purely accidental cause, which ordinary prudence on the part of the defendant's vice-principal could not have reasonably foreseen, there would be much weight in the contention that the proximate cause of the injury was not traced to a duty that the defendant, as a master, owed to the plaintiff, as its servant. But when, as in the case at bar, the fact of actual knowledge of defendant's superintendent of the defective condition of the bonnet is submitted to the jury for a special finding, at the request of defendant, and the jury answer, in substance, that the superintendent did know of the defective condition of the bonnet when he directed the plumber to put in the pipe, we can hardly say, as a matter of law, that the conduct of the master showed reasonable care and prudence in providing for the safety of his employees. If, then, the evidence offered was sufficient to sustain a finding of negligence on the part of the defendant in the use of a defective bonnet in the steam pipe near the plaintiff's place of employment, the question arises as to whether such negligent act is so linked in the chain of causality that resulted in the injury as to constitute the proximate cause thereof. It is plain that either the negligence of the defendant, in putting plaintiff in a place of apparent great peril and thereby causing him to suddenly elect to run away from the apparent danger, was the moving cause of the injury, or the injury was the direct result of plaintiff's own want of care in colliding with the handle of the truck. In *Lincoln Rapid Transit Co. v. Nichols*, 37 Neb. 332, it is said:

"When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is also dangerous and from which injury results, is not contributory negligence such as will prevent him from recovering for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make."

We therefore conclude that, under the evidence in this case, the question of defendant's negligence being the proximate cause of the injury was a question of fact for the determination of the jury.

The last contention urged is that the court, by giving paragraph 4 of the instructions, on his own motion, made "the master an insurer of his servant's safety." This paragraph is as follows: "You are instructed that it is the duty of every master to conduct his business with reasonable care and prudence, so as not to negligently or carelessly subject his servants to any danger not ordinarily incident to or connected with his employment, and it is the duty of the master to furnish his servants with a reasonably safe working place, and if, through the negligence of the master, the place where the servant was required to work is rendered unsafe, and, because thereof, the servant is injured, then the master is liable in damages for such injury, unless the servant was guilty of negligence or want of ordinary care which contributed to such injury." We are wholly unable to understand how this instruction, read as a whole, as it must be, could be fairly interpreted as, in effect, telling the jury that the master is the insurer of his servant's safety. The instruction merely tells the jury that the master owes a duty of using reasonable care and prudence in providing a safe place for his servant, and that it is only when by the negligence of the master the place is rendered unsafe that the master is liable. An instruction that only requires reasonable care on the part of the master is in direct conflict with the idea that the master is an insurer of the safety of his servants.

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.