Harold Bell, appellee, v. William R. Rocheford et al., appellants.*

Filed January 17, 1907. No. 14,645.

Master and Servant: Injury. Where one servant is placed in a position of subordination to, and subject to the control of, another servant of a common master, and is injured, without fault of his own, in the performance of his duty, and through the negligence of his superior, while acting in the common service, an action lies against the master.

* Rehearing denied. See opinion, p. 310, post.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE.  *Affirmed.*

*Greene, Breckenridge, Matters & Kinsler,* for appellants.

*Weaver & Giller* and *J. M. Macfarland, contra.*

JACKSON, C.

The plaintiff had judgment for damages on account of an injury sustained while in the employ of the defendants.  The defendants appeal.

The facts concerning the injury are not disputed.  The defendants were independent contractors engaged in the erection of a power house for the Omaha Street Railway Company, and were, at the time of the accident, putting in a concrete floor in the second story.  That portion of the floor at the point where the accident occurred was above a room 9 by 40 feet, with a 10 foot ceiling.  To support the concrete steel I beams were placed crosswise of the room at a distance of 8 or 9 feet apart.  They rested at either end upon a concrete wall, in which openings were left for that purpose.  The steel beams were from 4 to 6 inches wide at the base and top, 10 inches deep, and weighed 150 pounds.  The pockets into which the ends were placed were about 10 inches wide.  For the purpose of holding the concrete in position until it hardened, wooden forms were built so that they might be removed after the concrete became self-supporting.  These forms were constructed by placing a 2 by 12 inch plank lengthwise under each I beam, and were held in place by means of 4 by 4 inch pieces extending from the lower floor to the under side of the plank, leaving a margin of from 3 to 4 inches on either side of the steel.  The space between two I beams was called a section.  Other planks were then placed crosswise of the section, the ends resting upon the edge of the 2 by 12 inch pieces.  The forms were being

23

constructed under the supervision of a carpenter, named Wooley, and by a carpenter, named Turner. The plaintiff was a common laborer engaged in wheeling concrete, handling lumber and other material. He assisted in knocking down the wooden forms after the concrete was hardened, and was subject to direction, both from Wooley and Turner, when his assistance was desired in bringing material and placing timbers in the construction of the forms. The first service performed by the masons in laying the concrete floor was to secure the I beams at either end by filling the pockets around the steel with concrete. This had not been done at the time of the injury.

On the day of the accident the plaintiff was engaged, during the forenoon and that portion of the afternoon up to the time the accident occurred, in another part of the building. Turner was employed constructing the forms at the place described. He commenced at the west end and was working east. He had completed 3 or 4 forms and was working, perhaps, on the fifth. The 2 by 12 at the east side of this form had been placed in position, and was supported by a 4 by 4 placed in the center of each end of the plank, leaving a projection of 4 inches of plank on each side of the support. Other planks had been laid crosswise to complete the bed of the form, with the exception of a single plank, when Turner left his work and went to the tool house for tobacco. Wooley called to the plaintiff to come and assist him in putting this last plank in place. Wooley was at the west side of the form and the plaintiff at the east. The plank selected was a little wide for the opening, and in order to crowd it into place one edge of this plank and the edge of an adjoining plank were raised, placed together in a V shape, and the plaintiff, in a stooping position, was attempting to crowd it into place. His weight and the pressure caused the 2 by 12 on the side where he was at work to tip, the steel beam turned over, and the form of that entire section fell with the plaintiff into the base-

ment below, resulting in the injury on account of which damages are claimed. The appeal involves the sufficiency of the evidence to sustain the verdict and judgment, and the giving of an instruction by the court on its own motion.

It is said that the accident was the result of a danger incident to the employment and was voluntarily assumed by the plaintiff; that it resulted from the incomplete condition of the form, and, if the the result of a negligent act, it was the negligence of a fellow servant. It appears that when the forms were completed, ready to bear the weight of the concrete, the 2 by 12 planks forming the base of the bed were supported each by 4 or 5 4 by 4 inch pieces, according to the weight to be carried, and that when the forms were all completed each extension of the plank beyond the base of the beam would carry an equal weight; that the dangerous condition of the form was open and obvious to all persons alike, and that the plaintiff, knowing of this condition, voluntarily assumed the risk of danger when he entered upon the form. It is true that to any person who knew the condition of the substructure the danger was obvious. It required no unusual power of observation and skill to determine that fact; but the plaintiff did not know the condition of the substructure. He was at work on the floor then being laid. The bed of the form was all in place with the exception of a six-inch plank. The substructure was hidden from his view. When he entered upon the superstructure at the command of Wooley, he would be justified in believing that the substructure was completed so that the element of obvious danger did not exist. It can not be said that the accident was the result of the negligence of a fellow servant.

It is true that one of the defendants, the only witness called on behalf of the defense, testified that either he or his partner were present all the time during the construction of the building and personally superintended the work, and that they had no foreman; that they some-

times sent directions to laborers through other workmen. It appears, however, without contradiction, that when Turner went into the employ of the defendants he received his instructions from Wooley. The plaintiff and other laborers testified to having been directed and controlled in their work by Wooley.

Where one servant is placed in a position of subordination to, and subject to the orders and control of, another servant of a common master, and the subordinate servant, without fault of his own, and while in the performance of his duty, is injured through the negligence of the superior servant, while acting in the common service, an action lies in favor of the inferior servant so injured against the master. The relation does not arise out of the fact that Wooley was the higher grade workman, but because of the fact that he was vested with authority to and did control and direct the labor of the plaintiff. To a somewhat less extent this was also true of Turner, who disclosed by his own evidence that, when he desired the assistance of a common laborer, he called and directed him at his pleasure. The mischief of the case lies not alone in the incomplete condition of the form, but is rather due to the fact that the plaintiff was directed to enter upon it in its unsafe condition by his superior. The case is not to be tested by the rule that prevails where workmen are provided with material to erect a trestle upon which they are to work. Had the plaintiff himself constructed the form after being provided with suitable material for that purpose, or had he directed or controlled its construction, it may be conceded that he could not recover; but he was charged with no such duty. On the contrary, the defendants, through Wooley, assumed the supervision and control of its construction, and were bound to exercise ordinary care and make it reasonably safe and secure for those who might be called upon to use it.

The instruction complained of is as follows: "You are instructed that it is the duty of the master to use ordinary care to provide his servant with a reasonably safe working

place, and with reasonably safe appliances with which to work; but an employee assumes the risks arising from defective appliances used or to be used by him, or from the manner in which a business in which he is to take part is conducted, when such risks are known to him, or apparent and obvious to persons of his experience and understanding, if he voluntarily enters into the employment or continues in it without complaint or objections as to the hazards. Where, however, the servant, in obedience to the requirements of ·his master, incurs the risk of appliances which, although dangerous, are not of such character that they may not be safely used by the exercise of reasonable skill and caution, he does not, as a matter of law, assume the risk of injury from accident, provided such accident results directly from the negligence° of the master." The objections to the instruction may, perhaps, be best stated in the language of counsel: "When we consider that the form or structure collapsed under the weight and pressure put upon it because of its unfinished condition; or, in other words, that because of the particular stage of the work it was too weak to sustain the weight, and not through any defect either in the material or the construction, it is obvious that an instruction which assumes that the master was furnishing the form or structure for the workmen to use, and therefore was bound to exercise reasonable care for their safety while using it, is not only inapplicable to the circumstances of the case, but is entirely misleading and confusing." We do not regard the instruction as being open to the criticism made, especially in view of the conclusion of fact already reached.

We find no error in the record, and recommend that the judgment be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed July 12, 1907. *Rehearing denied:*

1. **Master and Servant:** INJURY: LIABILITY. Defects in scaffolds, forms and temporary structures, not intended to become a part of the completed building, are not defects of the structure due to its unfinished state.

2. **Negligence:** PROXIMATE CAUSE. The proximate cause is the primary fault where no intermediate cause, disconnected therefrom and self-operating, intervenes to produce the effect.

CALKINS, C.

This cause was submitted upon an oral argument of a motion for rehearing. The former opinion by JACKSON, C., *ante* p. 304, contains a statement of facts, which is accepted by counsel for both parties as sufficient.

1. It is urged that the infirmity which made the section unsafe at the moment it fell was due solely to its unfinished state, and therefore, that it was an inevitable risk of construction which the plaintiff assumed. This argument was met in the former opinion, and we are satisfied with the reasons there given. It is, however, proper to say that the case of *Armour v. Hahn,* 111 U. S. 313, cited by defendant in support of his argument, presents facts essentially different from those we are now considering. In that case, the timber which gave way was not a scaffolding or temporary structure intended to facilitate the execution of the work and then to be removed, but a component part of the building, insecure because incomplete, not intended to support the weight of the workman and upon which he was not instructed to go. In this case, the structure which gave way was a form designed to support the cement until it had hardened, and incidentally the weight of workmen during construction, after which it would, in the regular course of the work, be removed. Defects in scaffolds, forms and temporary structures, not forming part of the building, serving only as aids in construction, are not defects of the structure due to its unfinished state.

2. The defendants insisted that the plaintiff knew, or should have known, the defects in the structure, and that he therefore assumed the risk in going upon the same. This contention is disposed of in the former opinion upon the ground that, when the plaintiff entered upon the superstructure at the command of Wooley, he was justified in believing that the substructure was completed so that the element of obvious danger did not exist, and this still seems to us to be the correct view. It is now urged that the pleadings are insufficient to sustain the verdict upon this theory of the case. The amended petition described the construction of the forms, set forth the particular facts which it was claimed made the structure insecure,. and alleged that the plaintiff, in obedience to the direction of the defendant's foreman, went upon the structure, and, while engaged in his work thereon, was by the falling of the structure precipitated to the floor below, thereby suffering the injuries complained of. If we understand the contention of the defendant's counsel, it is that, since the petition does not state that the weight of the plaintiff and his efforts to crowd the plank in place caused the collapse of the section, it fails to allege the proximate cause of the accident. The argument of the defendant proceeds upon the theory that placing the weight of the plaintiff upon the structure, and his effort to put the plank in place, was the proximate cause of the accident. It is the same as if, in a case where A, owing a duty to B to construct a bridge in a safe and secure manner, negligently leaves it unsafe and insecure, and B, relying upon its apparently safe condition, or, as in this case, upon the express direction of A, goes upon it and it falls, we should say that the proximate cause of the catastrophe was the weight of B, and not the negligence of A. Such is not the law. The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in time to the injury. _Milwaukee & St. P. R. Co. r. Kellogg_, 94 U. S. 469; _Aetna Fire Ins. Co. v. Boon_, 95

U. S. 117. The inquiry must be, says Mr. Justice Strong, "whether there was any intermediate cause, disconnected with the primary fault and self-operating, which produced the injury." It is clear that the weight of the plaintiff, and his efforts to place the plank, was not such intermediate cause, disconnected from the primary fault and self-operating, and was not, therefore, in the meaning of the term as applied in the law of negligence, the proximate cause of the injury, and it was neither necessary nor proper to plead it as such in the petition.

We are therefore of the opinion that the motion for a rehearing should be overruled, and we so recommend.

JACKSON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the motion for a rehearing is

OVERRULED.