CLYDE E. PARKER, APPELLEE, v. OMAHA PACKING COMPANY, APPELLANT.

FILED DECEMBER 14, 1909. No. 15,845.

1. **Appeal: VARIANCE.** "A variance between *allegata et probata* will not be held to be prejudicial, requiring a reversal of the judgment, where it appears that the party complaining was not actually misled or surprised to his disadvantage." *Ittner Brick Co. v. Killian,* 67 Neb. 589.

2. ———: INSTRUCTIONS. While not a technically accurate statement of the law as to the extent of a master's obligation to see that the appliances furnished his servants are reasonably safe for use, still a judgment will not be reversed because the jury were instructed that "it is the duty of the master" to provide a reasonably safe working place and reasonably safe machinery and appliances, unless it is evident that under the circumstances of the case the jury were misled thereby, to defendant's prejudice.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*T. W. Blackburn,* contra.

Letton, J.

The plaintiff, while working as a laborer for the defendant under the direction of a foreman, was engaged, with other workmen, in the work of removing a brine pump from its foundation in a building, known as "The Old Omaha Packing Company Plant," for the purpose of transferring it to another building. While thus engaged, he was directed by the foreman to remove a block from under one side of the pump; one end of the pump having been raised to a height of about eighteen inches by two jacks, one on each side. The pump was about nine or ten feet long, four feet wide and four feet high, and very heavy. The foreman, with several workmen and the plaintiff, were upon one side of the pump, when the plaintiff was directed to go to the other side and remove the block. A witness named Monroe testifies that, when the plaintiff was directed to remove the block, witness told the foreman that the jack on the side on which they were standing, the east side, which was then tipped, was going to slip, and the foreman said, with an oath: "You go ahead and pull that block out." This is denied by the foreman. The plaintiff went to the other side of the pump, and while removing the block, as directed, the jack on the east side slipped and the pump came down upon his thumb, crushing it to an extent that necessitated amputation. For the defendant, the foreman testifies that the falling of the jack was occasioned by its being struck by a plank in the hands of one Poloski; that Poloski was on the same side of the pump as he and Monroe; and that while Poloski was in the act of removing this plank from under the pump he carelessly struck the jack, knocking it down, and allowing the pump to fall on the plaintiff's hand. This is contradicted by Monroe, who says that Poloski was a boy about 19 years old; that he was not near the jack at the time that it fell, but was standing farther from the jack than the witness, and at a distance of at least four feet away. None of the other workmen present

upon that side of the pump were called. The jury found for the plaintiff, assessing his recovery at $1,200, and defendant appeals.

A number of grounds of error are assigned by the defendant, but the one principally relied upon is that the *allegata et probata* do not agree; that the issue submitted to the jury is not an issue made by the pleadings in the case. It is insisted that a defect in the jacks is averred to be the proximate cause of the injury to the plaintiff, and that there is no testimony to show that the jacks were in any way defective. It is further insisted that the doctrine of safe place to work does not apply in such a case as this because the condition is constantly changing; that the plaintiff "was assisting in a work of dismantling, and change of a place which was provided, not for the plaintiff, but for whoever may have been assigned to the care and operation of the brine pump," and therefore that the only actionable negligence charged was that he was supplied with defective jacks with which to do the work. On the other hand, the plaintiff argues that the allegations show that the defendant's foreman was directing the plaintiff, and that while plaintiff was acting under such direction the accident occurred, and that the language of the petition is sufficiently general to cover any kind of negligence shown by the evidence, whether it should be the unsafety of the place, the unsafe character of the tools, or the negligent order of the foreman to perform work in a place made dangerous by defective machinery, of which the foreman was informed and the plaintiff knew nothing.

It is a settled rule that the allegations of a petition will be liberally construed when not attacked until during the trial. There was a general demurrer to the petition filed before answer, and properly overruled, but this did not attack the defect now relied upon, the contention now being that the evidence is not within the allegations of negligence. We have said that "a pleading may be said to allege what can by reasonable and fair intendment

be implied from its statements." *Dailey v. Burlington & M. R. R. Co.*, 58 Neb. 396; *Roberts v. Samson*, 50 Neb. 745.

The petition alleges that the plaintiff was working under the direction of defendant's foreman; "that while thus engaged, and while the said foreman was directing, and pursuant to the direction of said foreman, the plaintiff was engaged, * * * and while so performing the work directed, and in the act of pushing the said block out from beneath the brine pump, owing to the unsafe and defective jack upon the opposite side of said brine pump, said defective jack gave way," etc. This language is followed by an allegation that "the accident was due wholly to the negligence of defendant, and said negligence consisted in providing plaintiff an unsafe place in which to perform his work and defective machinery for the purposes of the work undertaken, as hereinbefore described, which unsafety as to place and defects in machinery was wholly unknown to the plaintiff."

It is evident that the jury must have believed the testimony of the plaintiff's witnesses as to the defective and unsafe manner in which the jack was placed, and disbelieved the account of the accident given by the foreman. The jack itself was in good order, but was carelessly set. It must therefore be regarded as settled by the verdict that the foreman knowingly directed the plaintiff to perform work in a place when there was an extraordinary risk made specially unsafe by the situation of the jack. While the law requiring an employer to furnish a safe place to work is subject to many modifications depending upon the nature of the work, and while it is true, as defendant contends, that such work as dismantling is to some extent an exception to the general rule, still, even in such work, if an employer directs a servant to perform some work made especially hazardous by reason of the master's negligence, of which special hazard the servant is unaware, the servant does not assume such special hazard, and, if he is injured by reason

of such negligent act or omission of the master, a liability ensues. *Bell v. Rocheford,* 78 Neb. 304, 310.

Section 138 of the code provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it have actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as may be just." It is clear that proof of all the circumstances surrounding the accident was before the jury, and that no different defense would have been made if a more specific allegation as to the cause of the dropping of the pump had been set out in the petition. A variance between the *allegata et probata* will not be held to be prejudicial, requiring a reversal of the judgment, where it appears that the party complaining was not actually misled or surprised to his disadvantage. *Toy v. McHugh,* 62 Neb. 820; *Ittner Brick Co. v. Killian,* 67 Neb. 589.

Complaint is also made of certain language used in the fourth instruction, as follows: "You are instructed that it is the duty of every master to conduct his business with reasonable care and prudence, so as not negligently or carelessly to subject his servant to any danger not ordinarily incident to or connected with his employment. And it is likewise the duty of the master to provide his servant with a reasonably safe working place, and with reasonably safe machinery and appliances with which to work." In this connection attention is called by defendant to the case of *Cudahay Packing Co. v. Roy,* 71 Neb. 600, in which an instruction stating that "it is the duty of the master to his servant to provide his servant with reasonably safe machinery," etc., was criticised, and it was held error to give this in connection with other instructions then given; but in that case the defect in the appliance was a latent defect and the vital point in

the case was whether the master had used reasonable care in furnishing the servant a lever which proved to be clearly defective for the purpose for which it was used by reason of a hidden flaw in the metal. While it is perhaps not always strictly accurate to say that "it is the *duty* of the master" to provide a reasonably safe working place because there may be cases such as the *Roy* case, in which a jury might be misled as to the liability of the master when defects in an appliance are latent, still the use of this phrase is a convenient form of expression, and one in constant use. A case will not be reversed on account of the use of this expression unless, under the peculiar circumstances of the case, a jury would be apt to be misled thereby as to the amount of care demanded on the part of the master in supplying tools. An instruction containing the language complained of is approved in *Cudahy Packing Co. v. Wesolowski,* 75 Neb. 786, and we have upheld instructions many times containing this expression.

It is also contended that evidence was erroneously admitted affecting the plaintiff's measure of damages. The evidence complained of was to the effect that previous to the employment of the plaintiff at common labor he had been employed by a telephone company as a lineman at $40 a month and expenses. The evidence shows that as a common laborer he was receiving $1.90 a day at the time of the accident. The plaintiff was a young man 25 years old. He suffered great pain and agony, and lost the thumb of his right hand by amputation at the second joint. We believe that, taking into consideration the injury, the plaintiff's expectancy proved, and the amount of the recovery, the admission of evidence showing such a slight difference in wages was not prejudicial error.

We are unable to see that any error or defect in the pleadings or proceedings has affected the substantial rights of the defendant.

The judgment of the district court, therefore, must be

AFFIRMED.