WILLIAM H. PARSONS, APPELLEE, V. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED OCTOBER 20, 1923. No. 22425.

1 Master and Servant: ASSUMPTION OF RISK. An employee, by entering and continuing in the employment of a railroad company, under the federal employers' liability act, assumes the ordinary risks and dangers incident to the employment, and the extraordinary risks and dangers which are obvious or of which he is aware, but he does not assume extraordinary risks which are unknown to him or which are not so obvious that a man of ordinary intelligence would have appreciated them.

2. Trial: INSTRUCTIONS. "Whether the instructions could have produced misconception in the minds of the jury is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given, and the tendencies of the proof in the case to which they could possibly be applied." *Seaboard Air Line Ry. v. Padgett*, 236 U. S. 668.

3. Master and Servant: NEGLIGENCE: ASSUMPTION OF RISK: QUESTIONS FOR JURY. Evidence examined, and *held* sufficient to submit to the jury the question of negligence on the part of the defendant in the providing of an insufficient appliance with which to move a car in a railroad switch-yard, and the issue of assumption of risk on the part of the plaintiff.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Wymer Dressler, Robert D. Neely* and *Paul S. Topping,* for appellant.

*M. F. Harrington, Earl McDowell* and *Gerald F. Harrington, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN

and GOOD, JJ., REDICK and SHEPHERD, District Judges.

PER CURIAM.

Action brought by plaintiff under the federal employers' liability act to recover damages for personal injuries alleged to have been sustained by him by reason of the defendant's negligence. The trial resulted in a verdict and judgment in favor of the plaintiff for $5,000. The defendant appeals.

The material facts relating to the accident are as follows: On January 22, 1921, the plaintiff was, and for four years prior thereto had been, in the employ of the defendant railroad company as a switchman in the defendant's yards at Casper, Wyoming. He was what is termed by railroad men an "engine foreman." Generally speaking his duties required him to follow the engines and give directions to the members of the switching crew with respect to switching cars in the yards. He described his duties as "Just picking up cars and placing them where they belonged in the yards at Casper." As between himself and the other members of the switching crew he was foreman. On the morning of January 22, 1921, the plaintiff and other members of his switching crew were engaged in switching cars. One of the movements which they desired to make was to switch a car loaded with steel from the main lead-track onto a side-track, and "spot" it at a proper place. At the time in question the engine was headed west and had attached to it on the west three cars, the car loaded with steel, before mentioned, being on the extreme west end of the string of cars. In making this switch the men in charge moved the engine and cars toward the east on the main lead-track, and while the cars were still in motion the most westerly car was cut off, the speed of the engine accelerated, and after the engine and two cars had passed the switch the rear car, while in motion, was switched onto the side-track. It was intended that the momentum of the car cut off would be sufficient to carry it onto the switch-track, and in the clear of cars moving on the

main·lead-track.  The speed of the car, however, did not
carry it far enough to clear the main lead-track.  To
overcome this situation the men in charge undertook, to
move the car loaded with steel by a process known among
switching crews as "poling" the cars.  This is usually
done by wedging a stout pole or heavy timber between
a car on the side-track and a car or the engine on the
lead-track in such a manner that by moving the engine
forward the pole will push or shove the car on the side-
track forward.  The testimony shows that this process
is not an unusual one in moving cars in railroad yards.
The testimony shows that the defendant at its yards at
Chadron and Fremont, Nebraska, provides a stout pole
made of oak, about 12 feet long and 5 or 6 inches in
diameter, which is carried on the switch engine, and
which is intended to be used in "poling" cars.  No such
appliance was provided at the Casper yards.  The testi-
mony shows that the men at Casper usually used, in
place of a regular pole, a railroad tie or heavy timber
for "poling" cars.  When the car failed to clear the
main lead-track, the plaintiff and his helpers immedi-
ately began search for some appliance suitable to pole
the car in the clear.  In the search the plaintiff picked
up a piece of gas-pipe, about 5 or 6 feet long and 2 inches
in diameter, but discarded it because, in·his judgment,
it was not suitable for the purpose.  It so happened that
a Mr. Collier, a yard foreman, who was the superior of
all the members of the switching crew, was present and
joined in the search.  He picked up the gas-pipe, which
the plaintiff had discarded a moment before, and handing
it to Mr. Carson, a member of the crew, said: "Come
on, let's get this car in the clear."  Collier and Carson
then signaled the engineer to back the train down so as
to bring the rear car of the train alongside of the car
on the switch-track.  Collier and Carson then proceeded
to place the gas-pipe in such a position that one end
would rest against the car on the switch-track and the
other against the car on the main lead-track.  At this

time plaintiff appeared and took a position between the two cars, about 15 or 20 feet from the gas-pipe, and joined in signaling the engineer to move the cars forward. When the signal was given Carson ran forward past the plaintiff, as he figured that the gas-pipe might rebound when the pressure was removed by the movement of the cars. When the car on the side-track moved, the gas-pipe was hurled forward through the air, end over-end, with great force, striking the plaintiff on the left foot, producing the injuries complained of.

The plaintiff's cause of action is grounded upon the theory of the defendant's negligence in failing to exercise ordinary care in providing the proper instrumentalities for moving the car, and the use by his superior of a light and insufficient gas-pipe.

It is first urged by the defendant that the court erred in refusing to direct a verdict for the defendant. In support of this contention, defendant argues, first, that the evidence is not sufficient to show any negligence on defendant's part; and, second, that the injury sustained by the plaintiff was a risk assumed by him by virtue of his employment.

It is conceded by both sides that the action is brought under the federal employers' liability act, and that the plaintiff's rights, if any, are to be determined in the light of the provisions of that act.

In so far as it is material here, that act provides, in substance, that common carriers engaged in interstate commerce shall be liable for the injury to an employee resulting in whole or in part from the negligence of any officer, agent, or employee of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, or other equipment.

As before pointed out, the testimony is clear that the gas-pipe used in poling the car was selected by Collier, the yard foreman, and it would seem that it was in-

Parsons v. Chicago & N. W. R. Co.

sufficient, unfit, and improper for the purpose for which it was used.

Defendant argues upon this point that, inasmuch as the plaintiff was the switch foreman, the selection and use of the gas-pipe must be regarded as his act. In this contention we think the defendant has overlooked one very important item of evidence, which is undisputed. While it is true the plaintiff was the foreman of the switching crew, it is also true that at the time of the accident Collier, the yard foreman, was present. He was the superior of all the switching crew, including the plaintiff. In the situation thus presented, Collier assumed to take charge of the work. He gave the command to the men to come and get the car in the clear. He selected the gas-pipe as an instrument to be used in poling the car, helped to put it in position, and, but for the sudden appearance of the plaintiff, would have had the work completed without plaintiff's knowledge or participation. As we view the record, it seems clear that the action of Collier must be regarded as the act of the defendant.

Under the facts and circumstances disclosed by the record, we are of the view that the question of whether ordinary care was used by the defendant in selecting an instrument reasonably safe for the work then being done was a question of fact for the jury.

It is next urged that the doctrine of assumption of risk precludes the plaintiff's right to recover. The rule is well-settled, not only in this state, but elsewhere. An employee, by entering and continuing in the employment of a railroad company, under the federal employers' liability act assumes the ordinary risks and dangers incident to the employment, and the extraordinary risks and dangers which are obvious of which he is aware, but he does not assume extraordinary risks which are unknown to him or which are not so obvious that a man of ordinary intelligence would have appreciated them. Numerous cases are readily to be found supporting this doctrine. A few

are here noted: *Fitzpatrick v. Hines*, 105 Neb. 134; *Bower v. Chicago & N. W. R. Co.*, 96 Neb. 419, subsequently affirmed in *Chicago & N. W. R. Co. v. Bower*, 241 U. S. 470; *Chicago, B. & Q. R. Co. v. Shalstrom*, 195 Fed. 725, and cases cited, with note in 45 L. R. A. n. s. 387; *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S. 18; *Chesapeake & O. R. Co. v. De Atley*, 241 U. S. 310; *Seaboard Air Line Ry. v. Horton*, 233 U. S. 492.

Under the facts disclosed by the record, we think the trial court was right in submitting to the jury the question of assumption of risk.

Complaint is made of a number of instructions given by the court, among them instruction No. 8. The only complaint made of this instruction is that it erroneously states that the law required defendant to furnish the employees a reasonably safe place to work, because negligence in this respect is not shown by the evidence, and that it erred in submitting a question as to the strength of the gas-pipe. There is some merit in the criticism directed to the first point. The master had used due care to provide a safe place in so far as the condition of the surface of the ground between the tracks was concerned, at least as safe a place as could be furnished in such a yard where tracks interlaced and engines and trains were apt to be running at any time. The place might in one sense be said to be unsafe at the time the plaintiff was injured, on account of the flying missile, but in a proper sense the place was safe. We must presume that the jury took all the evidence into consideration, that they were possessed of ordinary perception and apprehension, and that their verdict was not based upon a theory that the railroad yard was any less safe than such yards usually are. The fact that this isolated expression was used, not applicable to the evidence, should not operate to set aside the verdict, unless we are satisfied that it was prejudicial to defendant.

Another point may be mentioned, although not called

to the attention of this court or apparently to the attention of the trial court. The supreme court of the United States has said that under the federal employers' liability act it is the duty of an interstate carrier to exercise "reasonable care" (*Seaboard Air Line Ry. v. Horton*, 233 U. S. 492), "due diligence" "due care" (*Choctaw, O. & G. R. Co. v. McDade*, 191 U. S. 64), "reasonable diligence" (*Myers v. Pittsburgh Coal Co.*, 233 U. S. 184), to see that the appliances furnished its employees are not defective or insufficient to perform the work required of them, and that it is only for negligence in that regard that such a carrier is liable.

The instruction is inaccurate in the expression used as to this duty. Separated from its context, the portion of instruction No. 8 referred to is inaccurate, but when it is considered that the real complaint of plaintiff is that defendant was negligent in failing to use reasonable care in the selection of the appliance with which to move the car, and that it did in fact negligently supply an insufficient and defective instrumentality, and that this was the real issue on which the case turned, it seems to us that the instruction, taken as a whole and in connection with the entire charge of the court and the evidence in the case, could not have misled the jury. Its main purpose was to submit to the jury the question "whether the use of this gas-pipe was a negligent and wrongful act on the part of the defendant company. On that you will consider all the evidence, the strength of the gas-pipe, the custom of this and other roads as to what should be used in poling or frogging a car, and every fact which shows what would be reasonably necessary to be used as a pole under such circumstances, and every fact and circumstance in evidence, and from all this evidence decide for yourselves whether the defendant was negligent in the use of this gas-pipe, and whether this negligence caused the injury to the plaintiff. If you shall find that it did so cause the injury to him, then your verdict should be for the plaintiff, unless the de-

fense of assumed risk is made out here, and on that question the burden of proof is upon the defendant."

It was said in *Seaboard Air Line Ry. v. Padgett,* 236 U. S. 668: "Whether the instructions could have produced misconception in the minds of the jury is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given, and the tendencies of the proof in the case to which they could possibly be applied." To the same effect is *Southern R. Co. v. Bennett,* 233 U. S. 80, in which case, as here, this defect was not called to the attention of the court.

In *Parker v. Omaha Packing Co.,* 85 Neb. 515, in which a like statement as to the duty of a master was made, it was said: "A case will not be reversed on account of the use of this expression unless, under the peculiar circumstances of the case, a jury would be apt to be misled thereby as to the amount of care demanded on the part of the master in supplying tools." This court has departed from the view that trifling errors, such as may occur in any human undertaking or investigation, and which clearly do not impede or interfere with the due administration of justice, must necessarily result in a new trial.

It is complained that the verdict is excessive. There is a conflict in the testimony of several medical witnesses who were called. If the evidence of plaintiff and his doctor was believed by the jury, the pain was excessive and the injury permanent. If such is the fact, the amount of the verdict is ample, but not excessive. If the other witnesses as to the extent of his injuries are credited, the recovery, which was for $5,000, should be reduced. In any event the excess would not justify the court in setting the verdict aside, on account of it being the result of passion and prejudice. We do not feel justified in disturbing the finding of the jury in this regard. We have considered the other errors as-

signed, but deem none of them justifies a reversal.

AFFIRMED.