NOLEN E. O'DELL, APPELLEE, V. JAMES STEWART &
COMPANY, APPELLANT.

FILED MAY 4, 1914.    No. 17,625.

1. **Master and Servant**: APPLIANCES: DUTY OF MASTER.    It is the duty
of a master to use reasonable care in furnishing appliances reason-
ably safe for the use of his servants in carrying on his business.

2. ———: ———: NEGLIGENCE: QUESTION FOR JURY: INSTRUCTIONS. And in this case the questions as to whether or not the defect in the plank furnished by defendant for plaintiff's use was so obvious that plaintiff was guilty of negligence in not discovering the same, or so latent that an inspection of the plank by the defendant would not have revealed the defect, and as to whether or not defendant failed to use reasonable care in furnishing the plank which proved to be defective and not sufficiently strong for the purpose for which it was intended to be used, were questions for the jury, and were properly submitted by the instructions of the trial court.

3. **Damages:** PERMANENCY OF INJURY: EVIDENCE. Evidence examined, and set out in the opinion, *held* sufficient to require the submission to the jury of the question as to whether or not the injuries of the plaintiff were permanent.

4. ———. The amount of the verdict returned by the jury examined in the light of the evidence set out in the opinion, and *held* not excessive.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Rich, Nolan & Woodland,* for appellant.

*A. W. Jefferis* and *F. S. Howell, contra.*

FAWCETT, J.

From a judgment of the district court for Douglas county, in favor of plaintiff, in the sum of $8,000, in an action for personal injuries, defendant appeals.

Defendant is a copartnership, and had a contract for the erection of the Union Pacific headquarters building in the city of Omaha. Plaintiff was an iron-worker, belonging to what was known as the "derrick gang." The building is of steel construction. When the steelwork for the second floor was in place, defendant ordered from two reputable local lumber dealers about 65,000 feet of No. 1 pine and fir lumber, consisting of planks 12 inches wide, three inches thick, and 20 feet long. The planks were brought to the building in wagons. They were used for temporary flooring over the steelwork as it was erected and put in place. They were used in this manner on every alternate floor. They were first used on the second floor,

to which they were raised by a derrick.  When a wagon-load of these planks was brought to the building, the iron men, of which plaintiff was one, would come down on the derrick rope, throw the rope or chain around the entire load, and take it up a load at a time.  It was the duty of the plaintiff to come down on the derrick rope, fasten the chain around the load of planks, and ride up with the load to the floor on which the planks were to be scattered.  After the steelwork had been put in up to and including the steelwork in the fourth floor, these planks which had been laid on the second floor were piled up together, the derrick chain fastened around them, and each pile of planks carried by the derrick to the fourth floor, on which they were distributed as they had been on the second floor. In this work plaintiff participated.  On the day of the injury, October 21, 1910, plaintiff and another workman stepped at the same time on one of these planks on the fourth floor.  The plank broke, and both men fell to the ground below.  Plaintiff sustained a fracture of the right leg and other injuries.  Upon examination after the injury it was found that the broken plank had a large knot in it, extending the entire width of the plank, with the exception of about two inches on one edge.

The negligence charged by plaintiff in his petition is that it was the duty of the defendant to provide plaintiff with a safe place to work, "and to provide, select and use sufficient, strong, safe and secure planks to cover over the fourth floor of the iron framework of said building for the plaintiff and other workmen to stand and walk upon in the performance of their duties on said building as structural iron-workers, but, disregarding its duty, the said defendant carelessly and negligently failed to provide and furnish sufficient, strong, safe and secure planks to cover the fourth floor of said iron framework of said building, and carelessly and negligently, selected, provided, furnished and used as one plank extending across one of the eighteen-foot panels on said fourth floor a defective, unsafe, and insecure, brittle, sappy, cross-grained plank with a knot therein near the middle portion for the iron-work-

ers, among them this plaintiff, to stand and walk upon in the performance of their work;" that the facts alleged were unknown to the plaintiff, but were known to or could have been known by the defendant had the defendant exercised due care in providing, selecting, furnishing and using such plank. Then follow the nature and extent of plaintiff's injuries, with a prayer for damages in the sum of $25,000.

The answer (1) admits the copartnership character of defendant, the work in which it was engaged, that plaintiff was in its employ, that he received an injury on the date named, the nature and extent of which was to the defendant unknown. (2) Denies every allegation in the petition not admitted in paragraph 1. (3) Sets out some of the facts in relation to the use and handling of the planks, and alleges that the negligence, if any, in the selection, laying and using of the planks, and more particularly the one alleged to have broken, was the negligence of plaintiff and fellow servants of plaintiff, and not the negligence of defendant. (4) A plea of contributory negligence. (5) "Further answering said petition, this defendant alleges that the employment on which the plaintiff was engaged at the time of the said accident was inherently a dangerous one, and that the accident from which plaintiff suffered was one of those risks incident to the occupation and employment in which he was engaged, and was well known to and recognized and assumed by him." The reply is practically a general denial.

Defendant assigns nine errors, which are grouped and discussed in the brief under three subdivisions, which we will consider in the order in which they appear in the brief.

1. "The defense of 'assumption of risk' was properly pleaded and proved, and should have been submitted to the jury." This subdivision is based upon the fifth paragraph of the answer quoted above. It is argued by counsel for plaintiff that the defense of assumption of risk was not presented by the paragraph of the pleading quoted. We deem it unnecessary to decide this point, for the reason that, as we view the case, even if a proper affirmative

plea of assumption of risk was tendered by the pleading,. there is no evidence in the record to require its submission to the jury in any other manner than was done. It was no part of plaintiff's duty to inspect the plank furnished for the use of himself and his coemployees, nor was any opportunity afforded him to make such inspection. As already shown, the planks were hauled to the building in a wagon. When the wagon arrived, plaintiff, alone or in company with another employee, would descend on the derrick rope, fasten the rope or chain around the entire load, and ascend with it on the derrick to the floor where it was to be used. He therefore had no opportunity for inspection nor is there any evidence to show that any opportunity was afforded him, after the planks had been elevated to the floor of the building for use, to make such inspection, nor does the evidence show that the defect in the plank was of such a character as to be at once detected by plaintiff and his coemployees as they scattered the planks upon the floor. There is, therefore, an entire absence of testimony to show that plaintiff knew of the defect in the plank which caused his injury, or had any reason to suspect the same. The inspection of these planks was a duty which the defendant owed to plaintiff. *Union Stock Yards Co. v. Goodwin,* 57 Neb. 138. But, it is said, he knew the planks had not been inspected. The evidence falls short of showing such knowledge. It shows that he knew the planks were not inspected after they arrived on the wagon at the building, but there is no evidence to show that he knew that they had not been inspected at the time they were loaded upon the wagon. It is true he testified that they had never been inspected *so far as he knew*; but that is not proof that he knew they had not been inspected. They might easily have been inspected and he not have known it. But, even if he knew they had not been inspected, he did not know that the plank which caused his injuries was defective. The defect was not so open and obvious as to charge him with negligence in not discovering it, and he therefore had the right to assume that the boards were all reasonably safe

and fit for the purposes for which they were intended, and for which they had been furnished by the defendant. In *Cudahy Packing Co. v. Roy,* 71 Neb. 600, it is said: "The rule is well settled in this state that it is the duty of a master to use ordinary and reasonable care to furnish appliances reasonably safe for the use of his servants in carrying on his business, and that a failure to exercise such reasonable and ordinary care upon his part renders him liable, if the servant suffers any injury by reason of his negligence in that behalf. * * * It was the duty of the employer to use reasonable care in the furnishing of a lever of sufficient size, and to use reasonable care in the inspection of the lever at the time that the same was put in place, and if any defect had been visible or discoverable by the use of such care, by which a reasonable man might conclude that it was weakened or rendered unsafe for the purpose for which it was used, then the defendant would become liable for any damages which resulted in consequence thereof. The question as to whether or not the defect was obvious or was latent, so that an inspection of the lever would not have revealed it, is a matter for the jury to determine from all the evidence in the case, and it is for the jury to say whether or not the master used reasonable care in furnishing a lever which proved to be not sufficiently strong for the purpose, either by reason of its lack of size or by reason of a defect therein. It cannot begin its inquiry with the assumption that it is the master's absolute duty to furnish a safe appliance, but rather its inquiry should be whether he used reasonable care to provide such an appliance." Paragraphs 6 and 7 of the instructions given by the learned trial judge show that he was entirely familiar with the rule above announced. Indeed, they so closely follow the rule announced by Letton, J., in the opinion cited, that they cover every point indicated by the opinion as questions for the jury. We will not extend the length of this opinion by quoting the two instructions referred to, but content ourselves with saying that they correctly instructed the jury as to the law applicable to the facts in the case.

2. "It was error to admit the Carlisle table, and to give instruction No. 13." It is conceded in defendant's brief that instruction No. 13 would have been a proper instruction if plaintiff had lost his leg; but it is said that it "had no proper place in a case in which all the evidence was to the effect that there would be a complete recovery in not more than two years, by which time the injured leg would be as strong as ever, and where there is no evidence to justify the jury in assuming that the earning capacity of the plaintiff has been permanently impaired." The evidence as to the nature and extent of plaintiff's injuries rests entirely in the testimony of himself and his attending surgeon, Dr. T. J. Dwyer. We have read this testimony very carefully. Upon the trial plaintiff removed his outer garments and exposed the injured leg, and the injury and condition of the leg were pointed out to the court and jury by Doctor Dwyer. The main injury was a compound fracture of the thigh bone about half way between the knee and the hip. The fracture was an oblique one. Both ends of the broken bone were sticking through the flesh at the point of the fracture. Several splinters were broken clear off the bone at the point of the fracture. Some of these pieces of bone were removed at the time the bone was set, while others manifested their presence in such a way as to require their removal subsequently thereto. There was also an injury to the leg below the knee. That injury, however, appears to have been of minor importance, and was practically well at the time of the trial. The testimony of the doctor was of such a character that the jury could fairly find from it that as a result of plaintiff's injury his leg has been shortened three-quarters of an inch, and that this shortening of the leg will be permanent; that the knee had become ankylosed; that is, it had become so stiffened that, notwithstanding the fact that the doctor had "broken" it, by forcing a bending of the knee, the plaintiff was at the time of the trial unable to bend it more than 5 per cent. of normal; that is to say, the action of the knee at that time had been lessened 95 per cent. He also testifies that at the time of the trial the injured leg was some-

what atrophied, and that, while the leg may assume its normal size after it had been in use for a certain length of time, the muscles will never in his opinion, have exactly the same play as they would before his injury. In the light of this testimony, and much more of like character, it was not error for the court to admit the Carlisle table, and to submit to the jury for their determination the question as to whether or not plaintiff's injuries were of a permanent character.

3. "The verdict is excessive." The plaintiff at the time he received the injury was 25 years of age. He had been following the work of an "iron-worker" for about four years. At the time of the injury he was earning $4.50 a day. The uncontradicted evidence shows that prior to receiving his injuries he was a strong, hearty man. In the light of the injuries as shown by the evidence contained in the record, a portion of which is above outlined, we are unable to say that the verdict was excessive.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.