CUDAHY PACKING COMPANY v. JAMES W. ROY.

FILED APRIL 7, 1904. No. 13,491.

1. **Master and Servant:** APPLIANCES. A master is bound to use such care as the circumstances reasonably demand to see that appliances furnished his servants for use in his business are reasonably safe. He is not liable for defects, of which he has no notice, unless the exercise of ordinary care would have resulted in notice.

2. **Error:** INSTRUCTIONS. Instructions examined, and *held*, under the facts in this case, to be erroneous and prejudicial to the defendant.

ERROR to the district court for Douglas county: WILLARD W. SLABAUGH, JUDGE. *Reversed.*

*Greene, Breckenridge & Kinsler,* for plaintiff in error.

*A. C. Pancoast* and *A. H. Murdock, contra.*

LETTON, C.

This action was brought by James W. Roy against the Cudahy Packing Company to recover damages for personal injuries sustained by him while in the employ of said company. It appears that Roy was employed in that part of the Cudahy Packing Company's works, in South Omaha, known as the press room; that it was his duty to open and close a gate or valve by which certain soft tankage, consisting of offal, etc., contained in a tank situated upon the second floor of the tank-house and projecting through the floor into a room upon the first floor, in which the plaintiff worked, was emptied into a truck for the purpose of being conveyed to a press, in the process of the manufacture of fertilizer. This gate was opened and closed by means of a cast iron lever about 4 feet long and between 1 and 2 inches in diameter. While the plaintiff was attempting to close this gate, the lever broke, causing the plaintiff to fall backwards, by which the injuries complained of resulted. In his petition the plaintiff alleges that the company negligently provided an inefficient and defective appliance, that the lever was too small for the pressure that was necessary to be placed upon it; that it was of brittle cast iron, that it was too short, that it broke at its weakest point where there was a flaw in the iron, which defect was unknown to the plaintiff and, owing to the height of the lever, the plaintiff could not have discovered it, but the defendant might have discovered it by the exercise of due care and diligence in the selection and inspection of the same. He further alleges that the floor was greasy and slippery, and that the company failed to furnish him a reasonably safe and secure platform upon which to stand. That he had informed the superintendent of the need of this platform, and said superintendent in-

structed him to continue to use it for a short time, when he would have the necessary improvements made.

The defense is substantially the assumption of risks incident to the employment by the plaintiff, contributory negligence, that the defect in the lever was latent and was not discoverable by inspection, and lack of negligence in that respect by defendant.

The evidence shows that, a short time before the accident happened, the Cudahy Packing Company fitted up what was called the new tank-room at their packing house in South Omaha. That the witness, A. W. Ruff, who was the purchasing agent of the company, bought the gate valves and levers in use in that tank-room. That, before purchasing these appliances, he went to Chicago and examined the tank valves in use in several packing houses there, and also the patterns used for the plant of the Armour Packing Company in Kansas City, and that valves and levers of this pattern were in use in a number of packing houses in Kansas City and Chicago. The plaintiff had been working for the company as a common laborer for a number of years prior to the accident, and had been employed in the tank-room for about 3 weeks prior to that time. It appears that the tank-room or press-room, as it has been variously termed by the witnesses, was not in a completed condition. That the carpenters were still at work there, and that the gate which the plaintiff was operating had only been in use a short time when the accident happened.

It was the plaintiff's duty to open the valve by which a portion of the contents of the tank on the second floor was permitted to descend into a truck upon the first floor, and to close the valve when the truck was full. On the day the accident happened, the tank was empty; the plaintiff had been on the second floor cleaning it out; when he returned, a young man who had been trying to shut the valve had failed to do so on account of it being stuck, when the plaintiff took hold of the lever by which the valve was pulled and, while pulling it in the attempt to shut the

valve, the lever suddenly snapped, allowing him to fall over backwards, whereby he was injured. The lever itself was introduced in evidence and showed clearly, at the point of breakage, a "blow-hole" or "sand-hole," as it has been variously termed by the witnesses, extending from a point at or near the surface of the lever for a distance of five-eighths of an inch toward the center of the same, the effect of which would necessarily be to weaken it at that point.

The defendant complains of the admission of evidence in regard to a promise to make more convenient the place where the plaintiff stood, while at his work, and the failure of the defendant to carry out such promise. There is no evidence in the record which shows that the defective condition of the place where the plaintiff stood was in any manner responsible for the injuries which he suffered. But this was an issue in the case made by the pleadings and, if the defendant desired to remove the consideration of the same from the jury, it should have requested the court to do so by tendering an appropriate instruction.

Complaint has been made by the defendant of the rulings of the trial court upon the admission or rejection of evidence, especially of the witnesses Brizendine and Bergquist; but an examination of the record shows that substantially the same questions which were excluded were, at another point in the examination of the witnesses, asked and answered without objection, and hence the defendant can not complain.

The vital point in this case, as we view it, is whether or not the defendant used ordinary and reasonable care to furnish the plaintiff with a lever which was reasonably safe for the purpose for which it was used. The rule is well settled in this state that it is the duty of a master to use ordinary and reasonable care to furnish appliances reasonably safe for the use of his servants in carrying on his business, and that a failure to exercise such reasonable and ordinary care upon his part renders him liable, if the servant suffers any injury by reason of his negligence in

that behalf. The master is not an insurer of the safety of the appliances which he furnishes. If he exercises the reasonable care which a prudent man would ordinarily take for his own safety, under like circumstances, in furnishing his servants with instruments reasonably safe for the particular purpose for which they are used, he has fulfilled his whole duty in that respect. It was the duty of the employer to use reasonable care in the furnishing of a lever of sufficient size, and to use reasonable care in the inspection of the lever at the time that the same was put in place, and if any defect had been visible or discoverable by the use of such care, by which a reasonable man might conclude that it was weakened or rendered unsafe for the purpose for which it was used, then the defendant would become liable for any damages which resulted in consequence thereof. The question as to whether or not the defect was obvious or was latent, so that an inspection of the lever would not have revealed it, is a matter for the jury to determine from all the evidence in the case, and it is for the jury to say whether or not the master used reasonable care in furnishing a lever which proved to be not sufficiently strong for the purpose, either by reason of its lack of size or by reason of a defect therein. It can not begin its inquiry with the assumption that it is the master's absolute duty to furnish a safe appliance, but rather its inquiry should be whether he used reasonable care to provide such an appliance.

In the sixth instruction to the jury, it is said by the court: "It is the duty of the master to his servant to provide his servant with reasonably safe machinery and appliances with which to work, and if the master fails in this regard and the servant is injured thereby, then the master is liable for such injury, unless the negligence or want of ordinary care of the servant contributed to his injury."

The tenth instruction was as follows: "If you believe from the evidence that plaintiff was injured substantially as al'.ged, and that such injury was caused by the negli-

gence of the defendant in providing the lever for use by plaintiff, and that plaintiff did not assume the risk of danger arising from its use, and that the plaintiff was not guilty of contributory negligence, then you should find for the plaintiff and assess his recovery as hereinafter stated; but if you do not so find, your verdict should be for the defendant."

By these instructions, the jury were told that it was the duty of the defendant to provide Roy with a reasonably safe lever, and if it failed in this duty and Roy sustained injury, it was liable. It is true that, by the twelfth instruction, the jury were told that if, by the exercise of reasonable care and prudence on the part of the defendant, the defect in the lever would not have been discovered before the time of the injury, then the defendant would not be negligent with reference thereto; but, taking the instructions as a whole, we are satisfied that, under the circumstances in this case, where the question of the master's liability to his servant rests upon the single question, whether or not the master used ordinary and reasonable care in furnishing and inspecting the lever whose breaking caused the accident, and where the master's liability may rest largely upon the question whether the defect in the lever was one which ordinary care could have discovered and guarded against or was latent, so that the exercise of reasonable care by the master could not have discovered it, the unqualified statement that it was the master's duty to his servant to furnish a reasonably safe appliance was erroneous. We do not think that the proper rule can be better stated than in the language of Commissioner IRVINE, in *Lincoln Street R. Co. v. Cox*, 48 Neb. 807:

"To a legal mind the word 'reasonably' might perhaps imply the element of care; but we must deal with the instructions in the sense in which they would be understood by the jury. Notwithstanding these qualifying words, we think it quite clear, as already stated, that the instructions made the case turn upon the fact of danger and not

the fact of negligence. A master does not insure his servants against defective appliances. He is not chargeable in all events because the appliances furnished his employees are defective. He is liable only when he has been negligent in the matter. The rule is that as to his servants he is bound to use such care as the circumstances reasonably demand, to see that the appliances furnished are reasonably safe for use, and that they are afterwards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice, unless the exercise of ordinary care would have resulted in notice. *Sioux City & P. R. Co. v. Finlayson*, 16 Neb. 578; *Missouri P. R. Co. v. Lewis*, 24 Neb. 848; *Union P. R. Co. v. Broderick*, 30 Neb. 735, all recognize this rule." In *Omaha Bottling Co. v. Theiler*, 59 Neb. 257, it is said by SULLIVAN, J.:

"The measure of defendant's duty to its servants was the care required by the usual and ordinary usage of the business. The standard of due care is the conduct of the average prudent man." See, also, *Chicago, B. & Q. R. Co. v. Oyster*, 58 Neb. 1; *Chicago, B. & Q. R. Co. v. Kellogg*, 55 Neb. 748; *O'Neill v. Chicago, R. I. & P. R. Co.*, 66 Neb. 638. The principle stated in *Leigh v. Omaha Street R. Co.*, 36 Neb. 131, and in *Hammond v. Johnson*, 38 Neb. 244, has been modified by the later decisions of this court.

In this case, where the question of fact as to whether the master had been guilty of negligence or not is so narrow, the attention of the jury should have been clearly directed to the limit of the master's liability. We do not think that the giving of the twelfth instruction cured the prejudicial language of the charge in other respects.

For these reasons, we recommend that the judgment of the district court be reversed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.