FIDELIA CORLEY, APPELLANT, V. SARAH A. HUBBARD; APPELLEE.

FILED MAY 14, 1935. No. 29271.

*Woods, Woods & Aitken,* for appellant.

*John J. Ledwith* and *Hall, Cline & Williams, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is an action to recover damages in the sum of $25,000 for personal injuries suffered by Fidelia Corley, plaintiff, as the result of a fall caused by a dog which Sarah A. Hubbard, defendant, owned and harbored in and about her home at 1909 F street, Lincoln, Nebraska. Plaintiff was defendant's housekeeper, nurse and companion. On the morning of October 3, 1933, when plaintiff was on a rear porch where there was no railing, the dog ran between her feet and tripped her. While unbalanced, she fell three feet from the open porch floor onto the ground or a concrete driveway and was severely and permanently injured. The plea of negligence and resulting damages contained allegations that the dog had a dangerous propensity to trip persons by running into and between their legs, that the propensity was fully known to defendant and that the dog indulged the propensity and thus caused the injury to plaintiff without any fault on her part. Negligence and resulting liability for damages, as alleged by plaintiff, were put in issue by formal pleadings. One of the defenses interposed was assumption of risk. After plaintiff introduced her evidence and rested, the trial court directed a verdict against her. From a dismissal of the action plaintiff appealed.

The question presented by the appeal is the sufficiency of the evidence to make a *prima facie* case in favor of plaintiff for the consideration of the jury. In this review,

issuable facts which the evidence in favor of plaintiff tends to prove will be regarded as established. The testimony of plaintiff is uncontradicted and binds both parties for the purposes of the appeal. It tends to prove the following facts:

As housekeeper, plaintiff was employed by defendant July 12, 1930, knowing the latter owned the dog. His care was the task of the owner, not of plaintiff. At first the Hubbard household consisted of plaintiff, defendant, a son of the latter, and the dog. Defendant was then 76 years of age and had owned the dog several years. He was a pug-nosed bull dog, weighing 15 pounds, and his name was "Rags." He was not vicious but friendly; was his owner's pet and her greatest interest in life. From January, 1933, until the date of the accident, October 3, 1933, the only persons occupying the Hubbard home were plaintiff and defendant. In the meantime, February 3, 1933, a guardian of defendant was appointed on account of mental incompetency. Plaintiff, under changed conditions, assumed duties not imposed by her original contract of employment and helped to bathe and dress defendant who arose from her bed late in the morning and required only two meals a day, which plaintiff prepared as formerly.

To prove that defendant had knowledge of the dog's dangerous propensity to run between the legs of persons and trip them, plaintiff testified to two occasions on which Rags tripped defendant herself and threw her to the ground. One instance was in the fall of 1932 and the other in September, 1933. Promptly after defendant was first tripped plaintiff said to her, "We will have to get rid of the dog" and was told, "The dog should stay in preference to everybody else." Practically the same colloquy followed the other incident. Plaintiff declined to testify to any other similar indulgence of the dog's propensity to trip persons, except the instance resulting in her own injury. The evidence is that defendant, when tripped, was frail and easily unbalanced. There is no proof that Rags ever by prank or bite showed a vicious disposition toward

any person. On the contrary, the testimony is that he was kind and affectionate to his owner whom he had tripped. She did not store up any wrath against her pet on account of his pranks in tripping her.

Counsel for defendant argue that knowledge of the two instances in which the dog in a playful spirit tripped his own mistress was not knowledge that he had a dangerous propensity to trip others. Opposing counsel take a different view and contend that a single instance of the violent tripping of defendant charged her with knowledge which required her to anticipate the same danger to others, whether the dog was vicious or playful. The courts of the country seem to be divided on the same question, as indicated by judicial decisions.

Assuming, without deciding, that defendant was chargeable with knowledge of her dog's dangerous propensity to trip persons, it becomes necessary to determine whether plaintiff, by her own testimony, proved that she assumed the risk of such danger as a matter of law. Plaintiff was in the continuous employment of defendant in the capacity of housekeeper, nurse or companion from July 12, 1930, until the date of the injury, October 3, 1933. Plaintiff and the dog were occupants of the Hubbard home during all that time. She had a part in selecting a chair in the dining-room as a place for the dog. Rags was in that chair when she passed him in going through the dining-room onto the porch from which she fell. As she passed him she said: "Rags, stay right there. It is too chilly for you, you will want right back in." She did not latch the door as she left the dining-room and stepped onto the porch and the dog came out and ran between her feet and tripped her. Though she said she did not take care of the dog, she admitted she sometimes gave him something to eat and did in fact order him what to do just before she was tripped. She then temporarily, at least, assumed charge of him. Defendant, under guardianship at the time, was in bed. Plaintiff knew Rags had once pulled defendant down with a chain; was familiar with the details of the two incidents

when the dog tripped his mistress; knew of no other pranks of a similar nature; was not afraid of the dog; appealed to her employer on the latter's own account to get rid of him, not on behalf of plaintiff who never made any protest on her own account; had been emphatically· told the dog would remain in the Hubbard home. There is no proof that defendant promised to confine the dog or to get rid of him. All the evidence on that point is to the contrary. The only reasonable deduction from the facts outlined is that plaintiff had the same knowledge as defendant respecting the dog's disposition, propensities and evidential pranks prior to October 3, 1933. If defendant was chargeable with knowledge of the dog's dangerous propensities to trip persons, the same knowledge was likewise imputable to plaintiff, who voluntarily remained in the service of defendant without any inducement by the latter. The evidence will not admit of any other interpretation. Under the circumstances and facts to which plaintiff herself testified, her injury was a risk of her employment as a matter of law. The evidence would not sustain a judgment in her favor and the peremptory instruction was, therefore, free from error, without regard to the reason given by the district court for the decision below. The law applicable has recently been stated as follows:

"'An employee assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger.' *Atchison, T. & S. F. R. Co. v. Wyer,* 8 Fed. (2d) 30." *Campbell v. Chicago, R. I. & P. R. Co.,* 120 Neb. 499. See, also, *Moriarty v. Miller,* 99 Neb. 614.

The cases cited by plaintiff in support of her argument in favor of the proposition that assumption of risk was a question for the jury do not necessarily control the decision in view of the established facts.

Plaintiff's distressing, permanent injury and her long suffering, both physical and mental, as evidenced by the testimony of physicians, make a pathetic appeal to hu-

man sympathy, but neither emotion nor sentiment can supply evidence or law for a *prima facie* case.

AFFIRMED.