LAWRENCE LOWNES, APPELLANT, v. HOWARD G. FURMAN ET AL., APPELLEES.

71 N. W. 2d 661

Filed August 19, 1955. No. 33723.

*J. E. Porter* and *Harris W. Snyder*, for appellant.

*Stubbs & Metz*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Lawrence Lownes brought this action in the district court for Dawes County seeking to recover damages because of personal injuries he sustained while employed

by defendants as a day laborer. The basis for the action is the claim that his employers required and permitted him to work with a power driven feed grinder and blower that was in a defective condition. Issues were joined and trial had. At the conclusion of plaintiff's evidence the defendants moved for a directed verdict, which was sustained. A verdict was rendered accordingly. Plaintiff filed a motion for new trial and this appeal is from the overruling thereof.

In considering the record to determine whether or not appellant made a prima facie case we apply thereto the following rule: "A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Ring v. Kruse, 158 Neb. 1, 62 N. W. 2d 279.

Appellee Furman Hereford Ranch is a partnership consisting of appellees John H. Furman and Howard G. Furman. The partnership was, at all times herein material, engaged in the business of ranching and farming in Dawes County. About May 1, 1952, one of the partners employed appellant as a laborer to assist generally in the ranching and farming activities.

What interest, if any, appellee Frances E. Furman had in either the partnership or appellant's employment is not disclosed by the record. We will not again refer to her because it is apparent she has no interest in this litigation.

Appellant was, at the time of his employment, 45 years of age. He had served in the armed forces of his country from December 10, 1929, to September 6, 1945. After his discharge, until sometime in 1950, appellant helped his father ranch. During this time he also did farm work for neighbors. After he quit helping his father appellant

worked at various jobs, generally on ranches. While doing so he had on occasions worked with heavy equipment such as corn shellers and threshing machines. Shortly before May 1, 1952, he worked for 7 months in a Chevrolet garage. While he was employed as a laborer it is apparent appellant had gained some experience with various kinds of power driven machinery.

At their ranch appellees had a combination hammer mill feed grinder and blower which was used for grinding feed for their cattle. It was operated by tractor power and appellant was instructed in how to line up and attach a tractor thereto for that purpose. Prior to July 1, 1952, appellant had, on three different occasions, helped grind feed, his job being to scoop the grain onto the feeder table. However, appellant had never been instructed in the operation of the machine itself, someone always being present to supervise.

About 1 p. m. on July 1, 1952, Kenneth Goodwin, who was in charge of the operations on that day, told appellant he was to help grind some grain. Appellant thereupon proceeded to fill the cart, which was used to haul grain, with barley and place it in position in the building where the grinder was located. He then lined up the tractor he was operating and attached it to the grinder by means of a 60-foot belt so it could be used for power. After starting the tractor he got up into the cart and started to feed the grain onto the feeder table of the grinder.

The grinder was so located in the building that the feeder table was to the north and the blower part to the south. On the blower casing was a small metal door located at the base thereof and directly in line with, but just below, the carrying-away tube. This door is about 6 by 6½ inches in dimension, hinged on one side, and could be fastened shut on the other side by means of a small metal button or bolt which we will hereinafter refer to as the catch. This door is located to permit the blower casing to be cleaned out if, for any reason, it

becomes clogged with ground grain. The blower, which elevates the ground grain, operates by means of a propeller with blades which forces the grain up through the casing or tube. These propeller blades are located just inside the blower casing. At the place where this door is located they are about ¼ to ½ inch inside the wall of the blower casing. When this cleanout door is open the propeller will not elevate the grain up the tube but will blow it out the opening covered by this door.

About the time appellant started to feed grain onto the feeder table Goodwin was cleaning up some dried grain which had accumulated around this blower door. After appellant had been scooping grain onto the feeder table for some 5 minutes he heard Goodwin holler and as he could not hear what Goodwin was saying he looked up. As he looked up he saw a cloud of dust. This dust was coming out of the blower door opening. Appellant then stepped off the cart and shut down the tractor, causing the grinder to come to a stop. At the same time he went back to where Goodwin was to see what the trouble might be. He found that when Goodwin had cleaned out from in front of the blower or cleanout door, which will hereinafter be referred to as the door, that the pressure from within had blown the door open because the catch, which was intended to keep it shut, was missing. The catch was necessary to keep the door closed during the operation of the machine because of air pressure from within caused by the operation of propeller blades. Appellant found a stick which he and Goodwin placed in front of this door, shoving both ends thereof some 2 inches into the dried and matted grain which still remained at each side of the door. This dried and matted grain was from 6 to 10 inches deep. Appellant and Goodwin both thought the matted grain would hold the stick in place and prevent the door from again opening.

Appellant then started up the power and commenced scooping. After he had scooped 10 or 12 scoops of grain

onto the feeder table one of the smaller belts started slipping, causing the machine to slow down. Appellant called this to Goodwin's attention and suggested to Goodwin they quit for the day and get a new belt. Goodwin did not agree with this suggestion, telling appellant they had to finish the grinding that day. Shortly thereafter the machine picked up speed and appellant again started feeding it grain. About a minute after he started doing so he noticed dust coming from the opposite side of the machine. He then stepped down from the cart and headed toward the blower. At the same time Goodwin started from the blower, where he was working, and walked toward the front of the grinder. When appellant got to the rear or blower part of the machine he noticed the door was open and that ground grain and dust were coming out of the door opening. He then, while the power was on and the machine running, attempted to close it, intending to put the same stick in front of the door. For this purpose he reached down and put his right hand on the door. Suddenly, when the door was about 3 inches from being closed, he felt his hand jerk and his glove flew off. Shortly thereafter he realized that parts of the fingers of his right hand were missing. They had been cut off.

We have held, in similar situations, that: "In order to constitute actionable negligence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. The petition must allege these essential elements, and the proof must support them, or there can be no recovery." Ring v. Kruse, *supra*.

We think the following principles have application here:

"* * * it is the duty of a master to use ordinary and reasonable care to furnish appliances reasonably safe for the use of his servants in carrying on his business,

and that a failure to exercise such reasonable and ordinary care upon his part renders him liable, if the servant suffers any injury by reason of his negligence in that behalf. The master is not an insurer of the safety of the appliances which he furnishes. If he exercises the reasonable care which a prudent man would ordinarily take for his own safety, under like circumstances, in furnishing his servants with instruments reasonably safe for the particular purpose for which they are used, he has fulfilled his whole duty in that respect." Cudahy Packing Co. v. Roy, 71 Neb. 600, 99 N. W. 231.

" 'Ordinarily, in providing his employees with a place to work, or tools and appliances with which to work, an employer is bound to exercise reasonable care to insure the safety of such employees. The foregoing duty is a continuing one, and the employer is also bound to keep such place, tools and appliances in a reasonably safe condition, and to make seasonable inspection with that end in view.' (Rombold v. New Omaha T.-H. E. L. Co., 68 Neb. 71, 97 N. W. 1030.)" Riley v. Cudahy Packing Co., 82 Neb. 319, 117 N. W. 765. As therein stated: " 'The duty of inspection is affirmative, and must be continuously fulfilled, and positively performed.' (Brann v. Chicago, R. I. & P. R. Co., 53 Iowa 595, 6 N. W. 5, 36 Am. R. 243.)"

" '* * * The rule is that as to his servants he is bound to use such care as the circumstances reasonably demand, to see that the appliances furnished are reasonably safe for use, and that they are afterwards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice, unless the exercise of ordinary care would have resulted in notice. * * *.' (Lincoln Street Ry. Co. v. Cox, 48 Neb. 807, 67 N. W. 740.)" Ring v. Kruse, *supra.*

"The duty of the master as to working conditions includes a duty of care to supply competent supervisors of the operative details of the business where this is reasonably necessary to prevent undue risk of harm

to his servants in the performance of such details." Restatement, Agency, § 507, p. 1193.

Here the catch, necessary to keep this door shut when the propeller was operating because of the air pressure it created, was missing. Any seasonable or reasonable inspection would have discovered that fact. When it was discovered appellees' supervisor took no proper action to correct it but permitted what was a makeshift condition to exist. Under the foregoing principles there is no question but what the appellant made a prima facie case.

But even so appellees contend the negligence created only a condition which could not be and was not a proximate cause of the accident and resulting injury.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the accident could not have happened." Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825.

"If the negligent act creates a condition from which injury flows only by a subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not a proximate cause of the injury." Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

But here the missing catch permitted the door to open. It was one of the activating factors without which the accident would not have happened.

While appellant says he does not know how his fingers were cut off there is only one reasonably certain hypothesis to be drawn from the evidence as to how it could have happened, that is, he must have inadvertently put his fingers over the edge of the door, when he attempted to close it, and extended them into the blower casing where the blades of the circulating propeller cut them off. To permit a jury to conclude, on the basis of the evidence adduced, that it happened in some other

manner would be to let them conjecture or speculate in regard thereto. We have often said that a verdict based on conjecture or speculation cannot be sustained. Cronin v. Swett, 157 Neb. 662, 61 N. W. 2d 219.

Appellees pleaded contributory negligence and assumption of risk. Appellant contends, since appellees offered no proof in support thereof, these issues are not here for the purpose of this decision. Appellant apparently overlooks part of the rule applicable, which is as follows: "If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, *except insofar as the same may appear in evidence adduced for plaintiff.*" (Emphasis ours.) Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

"Contributory negligence by an employee is the failure to use such precautions for his own safety as ordinary prudence requires under the circumstances presented. He is chargeable with contributory negligence where he fails to take due care to avoid defects and dangers which are so open and obvious that anyone in the exercise of ordinary care and prudence would discover them." Ring v. Kruse, *supra.*

"In the absence of any statutory regulation of the subject, where a servant continues work with knowledge, actual or constructive, of dangers which an ordinarily prudent man would refuse to subject himself to, he is guilty of contributory negligence, particularly where he has created the danger." Ring v. Kruse, *supra.*

"As a general rule, where the servant has actual knowledge of the dangers to which the service exposes him or where the defects or dangers are so patent and obvious that in the exercise of ordinary care, in the performance of the services for which he was employed, he should have known of their existence, he assumes

the risk of injury incident thereto." Ring v. Kruse, *supra*.

If the negligence of appellant, in comparison with the negligence of the appellees, was, as a matter of law, more than slight and was a proximate cause of the accident of which appellant complains, he may not succeed in the cause. Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559; Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290.

The evidence shows the first time the door blew open the appellant shut off the power and caused the grinder and blower to come to a stop before attempting to close the door. He then became aware of the fact that the catch, which it was intended should hold this door shut, was missing. He then helped Goodwin construct, the makeshift arrangement, hereinbefore described, to hold it shut. When the door again blew open he alone attempted to restore the same makeshift arrangement but did so without shutting off the power, thus permitting the propellor blades inside the blower casing to continue circulating in full force. While he testified he did not know what was inside of the blower casing, and did not look to see, he admits, however, he knew there was something in there that was moving and there must be blades somewhere. The factual situation must have been apparent to him as dust and particles of grain were blowing out of the opening. While the machine was thus operating appellant attempted to close the door with his right hand, on which he had a glove. Suddenly his hand jerked and his glove flew off. Parts of the fingers on his right hand were gone. The only way that could have happened was by permitting his fingers to extend beyond the door and into the blower casing where the propeller blades were circulating. We think appellant, being fully aware the machine was operating while he attempted the makeshift plan for keeping the door closed, assumed all risk resulting therefrom and, in addition thereto, was contributorily negligent

as a matter of law, in a degree sufficient to defeat any right to recover that he might otherwise have had, by permitting his fingers to extend into the blower casing while the machine was operating. It is difficult to understand why a person who had some knowledge of power driven machinery and who admits he knew there was something in there moving would proceed to do what appellant did while the grinder and blower were in full operation. Surely his employer should not be held responsible for what he did under these circumstances.

We find the action of the trial court was correct. We therefore affirm its judgment.

AFFIRMED.