LEONARD GAMBLE, APPELLEE, v. EDWARD GAMBLE ET AL., APPELLANTS.

108 N. W. 2d 92

Filed March 10, 1961. No. 34903.

*Evans & Kelley, Maupin, Dent, Kay & Satterfield, Thomas O. David,* and *James J. Duggan,* for appellants.

*Sam S. Diedrichs,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff brought this action against the defendants to recover damages for personal injuries sustained when plaintiff's horse slipped and fell on him while he was engaged in rounding up cattle as an employee of defendants. The jury returned a verdict for the plaintiff and a judgment was rendered thereon. The defendants have appealed.

On January 18, 1957, plaintiff, Leonard Gamble, was employed as a ranch hand by his two uncles, the defendants Edward and Henry Gamble. We shall hereafter refer to the parties by their given names. The evidence shows that Leonard had worked for Edward and Henry for 18 months before the accident occurred which resulted in this litigation. Leonard was 23 years of age and experienced in caring for and handling cattle, including the use of a horse in moving them. Leonard had been raised in the neighborhood and was familiar

with the terrain of the Gamble ranch, including the school section on which the accident happened.

On the morning of January 18, 1957, Edward informed Leonard and Lane Dikeman, another ranch hand, that the three of them would move the steers on the school section to the home place because of his fear of a storm. It was a clear, sunny day. There was some snow and ice on the ground. There had been some thawing which resulted in slippery spots that made it more dangerous than usual in riding a horse. When told that they were to move the cattle Leonard said: "Don't you think it is awful slick to go there?" Edward replied: "We got to get them out that morning." Later Leonard told Edward it was getting "awful slick" and he didn't think they should get the cattle that day. Leonard testified that Edward said: "Well, you know what you can do." Leonard testified that he construed the latter statement to mean that he must help get the cattle or quit his job. In view of the verdict for plaintiff we accept Leonard's version of these conversations under the familiar rule that on appeal from a judgment rendered on a jury verdict the evidence will be considered in the light most favorable to the successful party.

The evidence shows that Leonard went to his own home for lunch, saddled his own horse which was not shod, met Edward and Dikeman at a designated point, and they proceeded to the school section. The evidence shows that the school section had a very rough terrain. It consisted of numerous ridges and canyons which, particularly in the south half of the section, were dangerous for a horseman because of the steepness of the canyon banks. After entering the pasture Edward directed Leonard to round up the cattle in the south part of the section, saying that he and Dikeman would work the north part.

Leonard thereupon proceeded south, riding the crest of a ridge until he came to one of the few places where

he could descend to the canyon floor with a horse. He rode down the slope from the ridge until the path led him to the steep canyon bank where the descent was usually made. Leonard estimated that the steep portion of the canyon bank was about 15 feet high and that the path at this point was quite steep for a horse to negotiate in getting to the bottom of the canyon. He observed that there was some snow and ice on the path and there had been some thawing, which made the path very slick in spots. He testified that due to the dangerous condition of the path he decided to dismount and lead the horse to the bottom of the canyon. While he was dismounting for this purpose the horse slipped and fell on him, causing very serious injuries. It is for the injuries thus sustained that the instant case was brought.

It is the contention of the plaintiff that it was negligence on the part of defendants to direct or order plaintiff to round up cattle in this canyon pasture when the surface of the ground was slick, as we have hereinbefore described. The defendants deny that the facts establish any negligence on their part and assert that in any event plaintiff assumed the risk of the danger of which he had complete knowledge.

"As a general rule it is the duty of a servant to take such precautions against known or apparent dangers arising from defective or dangerous machinery, appliances, tools, or places as an ordinarily prudent man would take under the same or similar circumstances, especially where the servant is in control of the cause or subject of danger." 56 C. J. S., Master and Servant, § 454, p. 1283.

This rule has been applied in this jurisdiction. In Lownes v. Furman, 161 Neb. 57, 71 N. W. 2d 661, a case similar in principle in which an employee, with knowledge of a defective door-covering to a moving blower on a feed grinder, attempted to close the door-covering without shutting off the power, which resulted in the

loss of the ends of his fingers, this court said: "We think appellant, being fully aware the machine was operating while he attempted the makeshift plan for keeping the door closed, assumed all risk resulting therefrom and, in addition thereto, was contributorily negligent as a matter of law, in a degree sufficient to defeat any right to recover that he might otherwise have had, by permitting his fingers to extend into the blower casing while the machine was operating."

In the foregoing case we cited with approval the rules announced in Ring v. Kruse, 158 Neb. 1, 62 N. W. 2d 279, as follows: "In the absence of any statutory regulation of the subject, where a servant continues work with knowledge, actual or constructive, of dangers which an ordinarily prudent man would refuse to subject himself to, he is guilty of contributory negligence, particularly where he has created the danger.

"As a general rule, where the servant has actual knowledge of the dangers to which the service exposes him or where the defects or dangers are so patent and obvious that in the exercise of ordinary care, in the performance of the services for which he was employed, he should have known of their existence, he assumes the risk of injury incident thereto."

It is urged that the rule is different where the master directs or orders the performance of the work. In Ittner Brick Co. v. Killian, 67 Neb. 589, 93 N. W. 951, the rule is stated as follows: "A servant can not undertake the performance of a service, even in obedience to the command of the master, where the danger is so obvious that injury would be inevitable, and if he does so, he will be held guilty of contributory negligence."

It is the rule in this state that where the master orders a servant into a place of apparent danger, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, and the servant is injured, the servant is guilty of negligence sufficient to bar a recovery. This is on the basis

that an employee who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious, is chargeable with negligence or contributory negligence in such a degree as to bar a recovery. Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59; Ring v. Kruse, *supra*. In such cases an employee will ordinarily be deemed to have assumed the risk of danger. Groat v. Clausen, 139 Neb. 689, 298 N. W. 563; Corley v. Hubbard, 129 Neb. 38, 260 N. W. 551.

Plaintiff relies on Sioux City & P. R. R. Co. v. Finlayson, 16 Neb. 578, 20 N. W. 860, 49 Am. R. 724; Lee v. Smart, 45 Neb. 318, 63 N. W. 940; Dehning v. Detroit Bridge & Iron Works, 46 Neb. 556, 65 N. W. 186, and other cases of similar import. These cases are grounded on an exception to the general rule and have no application to the case at bar.

Under the foregoing rules the plaintiff assumed the risk of the dangers that were obvious and admittedly known to him. The trial court was clearly in error in not directing a verdict in favor of the defendants. The judgment is reversed and the cause remanded to the district court with directions to dismiss plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.

WENKE, J., not participating.