**Wilbur O. BERN, Appellant,**

v.

**Cedric A. EVANS, Appellee.**

**No. 17811.**

United States Court of Appeals
Eighth Circuit.

Aug. 3, 1965.

Warren C. Schrempp, of Schrempp, Lathrop & Rosenthal, Omaha, Neb., David S. Lathrop, Henry C. Rosenthal, Jr., and Richard J. Bruckner, of Schrempp, Lathrop & Rosenthal, Omaha, Neb., for appellant.

Patrick W. Healey, of Healey, Healey & Goth, Lincoln, Neb., George Healey and John R. Baylor, of Baylor, Evnen, Baylor & Urbom, Lincoln, Neb., for appellee.

Before MATTHES and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

This is a personal injury case, arising out of a motor vehicle accident, in which appeal is taken from a judgment entered (pursuant to jury verdict) in favor of defendant-appellee and from an order of the District Court denying plaintiff-appellant's motion for new trial. Diversity jurisdiction is clearly established.

The parties will be referred to in this opinion as they were in the court below—

that is, Mr. Bern, the appellant here, will be referred to as plaintiff, and Mr. Evans, the appellee here, will be referred to as defendant.

The accident occurred at approximately ten o'clock A.M., April 11, 1961, on U. S. Highway 6, about three miles west of Milford, Nebraska. The highway at this point runs in an east-west direction. The roadway is constructed of concrete, is straight and generally level with a slight incline to the west. The regularly traveled road surface is twenty feet in width. At the time of the accident the sky was overcast with a light rain or drizzle falling; the pavement was wet, and it had previously rained hard. Though the drivers of all vehicles involved were using their windshield wipers, visibility was generally good.

The four vehicles directly involved in the collision were as follows:

Vehicle #1. A 1960 GMC tractor-trailer unit driven by the plaintiff.

Vehicle #2. A 1956 Chevrolet 2-door sedan driven by Grover C. Johnson.

Vehicle #3. A 1961 Oldsmobile 4-door sedan driven by Fred Laux.

Vehicle #4. A 1956 Chevrolet station wagon driven by Neville Piel.

In addition to the described vehicles there was involved (though indirectly, in that no actual contact was made with this vehicle) the 1958 Renault automobile owned and then being operated by the defendant, Mr. Evans.

As a result of the collision (initially involving vehicles #1 and #2) and ensuing fire, the occupants of vehicles #2 and #3 were fatally injured.

At and immediately prior to the happening of the accident, plaintiff in vehicle #1 was proceeding at approximately 45 miles per hour in a westerly direction. Vehicles #2, #3 and #4, in that order, were approaching from the west, proceeding in an easterly direction. The evidence shows these three vehicles were traveling two to three car lengths apart, at a speed approximating 45 miles per hour.

Defendant testified that, while traveling west on Highway 6, he had overtaken the plaintiff about one mile west of Milford. He thereupon undertook to pass plaintiff's vehicle, but, because of approaching traffic and the fact that mud and water was being thrown by the wheels of plaintiff's truck, defendant did not actually pull into the eastbound lane with the intention of passing that truck until he reached the vicinity of the accident. As he passed the left rear wheels of plaintiff's truck and drew alongside the trailer portion of that unit, a large quantity of muddy water was thrown onto the windshield of defendant's car, thereby momentarily obscuring his vision. Defendant immediately eased off his acceleration, although he did not completely remove his foot from the accelerator. When the windshield wipers had cleared his windshield, defendant began accelerating again. At this instant he noticed approaching traffic; this approaching vehicle was, in fact, vehicle #2. Defendant's vehicle at this point had progressed to a position well forward on plaintiff's trailer but had not yet reached the tractor. Defendant's testimony is that his speed at this time was approximately 60 miles per hour, and that the approaching car (vehicle #2) was then approximately four to five blocks away.

Faced with the situation described, defendant determined his best course of action was to pull further to the left, onto the shoulder of the highway, in order to permit the approaching vehicle (#2) to pass between him and the plaintiff. This he proceeded to do. His best estimate is that the approaching car was still "well over three blocks" distant and in its own lane of travel on the highway when he pulled onto the south (left) shoulder of the highway. Because of the soft, muddy condition of the shoulder, defendant's car was pulled into the ditch, where it proceeded west until coming to a stop. From the time that defendant first pulled his vehicle onto the shoulder, he remained south of the traveled portion of the roadway. Defendant did not

see the accident; by the time he brought his own vehicle to a stop, the collision had occurred.

Mr. Piel (driver of vehicle #4) testified that the first indication he had of an emergency situation, or the possibility of an accident, was when vehicle #2 (the second car in front of him) "went into a sort of a fishtail or a skid". At the same time, he observed the taillights on vehicle #2 go on, and that it moved into the wrong (westbound) lane of traffic. Almost immediately thereafter vehicles #1 (plaintiff) and #2 collided. As a result of this impact, vehicle #2 was "either throwed (sic) or shoved" into vehicle #3, which was in turn struck by vehicle #4, being driven by Mr. Piel. Vehicles #2 and #3 came to rest on the roadway and were burned; only slight damage was sustained by Mr. Piel's vehicle. Plaintiff's truck, following impact with vehicle #2, proceeded through the ditch on the north side of the road and came to rest in a field some distance west of the point from which it left the roadway.

Plaintiff's testimony reveals that, on the morning of the accident, he was proceeding toward Fairmont, Nebraska, with a load of feed; that he was traveling about 40 to 45 miles per hour; that the weather and road conditions were, generally, as previously described; that there was the usual or ordinary flow of traffic on Highway 6; and that the first indication he had of an emergency or the possibility of an accident was when the front of the oncoming car (vehicle #2) "nosed down with a sudden movement as though the brakes had been applied rather quickly and severely". He observed the oncoming car appear to go into a skid, and to proceed across the center line into his (plaintiff's) lane of travel. Plaintiff immediately applied his brakes and turned his vehicle toward the ditch on the north side of the highway. *At the same time, he observed through his left side window defendant's car, proceeding in the same direction he was then traveling.* Impact with vehicle #2 followed, that vehicle striking the left front portion of plaintiff's tractor. Plaintiff

testified that the right front wheel of his tractor was off the pavement at the time of impact with vehicle #2. Plaintiff further testified that vehicle #2 was approximately *150* feet away from him when he first saw its actions as above described.

Immediately upon his vehicle coming to rest in the field, plaintiff left the cab and returned to the scene of the collision, where he proceeded to render what aid he could to the injured occupants of vehicles #2 and #3. The investigating officer (Trooper Karthauser) was a member of the Nebraska Safety Patrol. He received notice of the accident by radio, while on patrol, and went directly to the scene of the accident. According to his testimony, the physical evidence revealed the following significant facts: No skid marks were found on the highway. Defendant's automobile came to rest at a point 216 feet west from where it left the highway; from the front end of defendant's car (which was resting generally in a northwest-southeast direction) to the rear end of vehicle #2 (which came to rest approximately in the middle of the pavement, pointing in a northwesterly direction) the distance measured 171 feet, west. The distance between the back end of plaintiff's semi-trailer, which came to a stop facing generally in a northwesterly direction, and the front of vehicle #2, measured 125 feet.

These undisputed facts establish that the impact occurred a minimum distance of 387 feet west of the point where defendant's vehicle left the roadway. Since the eastbound and westbound traffic were both traveling at approximately the same speed (45 miles per hour), it is a reasonable and justifiable inference to conclude that the oncoming car (vehicle #2) was at least 774 feet distant from defendant's vehicle when the latter actually left the roadway.

 Jurisdiction of the Federal Court obtaining in this case by reason of diversity of citizenship and the requisite amount in controversy, the District Court correctly looked to the substantive law

of the State of Nebraska in fixing the rights and liabilities of the parties. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. In reviewing this negligence action, we must consider (as did the District Court in passing on plaintiff's motion for new trial) the evidence and reasonable inferences drawn therefrom in the light most favorable to the defendant. State Farm Mutual Automobile Insurance Company v. Jackson et al., 8 Cir., 346 F.2d 484, June 10, 1965, and Gamble v. Gamble, 171 Neb. 826, 108 N.W.2d 92.

Plaintiff asserts as error on this appeal the giving by the trial court of certain instructions to the jury. In substance, plaintiff contends the trial court committed reversible error in each of two basic particulars. He contends that it was reversible error to submit to the jury the issue of contributory negligence on the part of the plaintiff, and that it was reversible error to submit to the jury the issue regarding the giving of an audible signal.

*Audible Signal.*

In paragraph IV of his amended complaint, plaintiff alleges, as specifications of negligence on the part of defendant, inter alia, the following:

"C. In failing to sound his horn or give any warning to the plaintiff that this defendant was attempting to pass the plaintiff.

"D. In violating Section 39–7,109 of the Revised Statutes of Nebraska, Reissue of Vol. III, 1960, which Section and statute was in full force and effect on April 11, 1961."

The statutory provision thus invoked reads as follows:

"39–7,109. Overtaking and passing vehicles; general rules. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, specifications, and special rules hereinafter stated: (a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right of the roadway until safely clear of the overtaken vehicle; (b) except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

Concerning this issue, the jury was instructed in the following language:

"You are instructed that the statutes of the State of Nebraska applying to this case are, in substance, as follows:

\* \* \* \* \* \*

(B) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

\* \* \* \* \* \*

"I have read to you the statute relating to the giving of an audible signal when overtaking or passing a motor vehicle. The duty to give such an audible signal is not an absolute one. Violation of this statute if you so find by a preponderance of the evidence, is not negligence in itself but is to be considered by you together with all of the other evidence in the case in determining whether or not under the circumstances of the case before you the driver should have given an audible signal. The duty of the operator of a motor vehicle to audibly signal depends upon the circumstances of the case. It is for you to determine under the circumstances of this case whether the defendant should have given an audible signal if you find by

a preponderance of the evidence such signal was not given."

The only evidence concerning the sounding of a horn was the testimony of the plaintiff, wherein he stated that he did not " * * * at any time prior to this accident in the last half mile hear a horn sound * * * " and the testimony of the defendant, wherein he stated " * * * I believe that I sounded the horn, but I don't recall it specifically.", that "I do not definitely remember it."

The trial court prepared the jury charge on the basis that it would not submit the issue of audible signal to the jury; plaintiff had requested an instruction submitting, as a specification of negligence, the failure to give an audible signal. Over objection of the defendant, and upon plaintiff's urging, the court concluded to submit such issue to the jury, and did so in the language quoted above.

Plaintiff makes two objections to the quoted instruction concerning audible signal. He objects to the Court's giving that portion of the charge which quoted the Nebraska statute, and he asserts as reversible error the failure on the part of the trial court to supplement its instruction on this issue by further instructing as to the provisions of Section 39–774, Nebraska R.R.S.1943.

■ The expressed basis for plaintiff's first objection (made to the trial court) was that "the record is devoid of any evidence either of an audible signal on the part of the defendant or an increase of speed on the part of the plaintiff" and, according to plaintiff's counsel, this objection was made "in conjunction with and particularizing upon exception number 1 to the submission of contributory negligence". The record establishes, as a fact, that there was no submitted issue of contributory negligence on the part of plaintiff in failing to give way upon audible signal. The only claim of contributory negligence submitted to the jury was plaintiff's failure to decrease speed when a special hazard existed with respect to other traffic (a

matter to be discussed later in this opinion). The issue involving audible signal was in this case only because plaintiff, in his amended complaint, pleaded the failure of defendant to give such signal and failure to comply with the requirements of the quoted statute, as alleged grounds of negligence on the part of defendant. Because of this fact and because of plaintiff's insistence that the issue be submitted to the jury, it was wholly proper, and in fact necessary, that the statutory language be given to the jury in order that it be apprised of the statutory duties in regard to an audible signal. The fact that such statute also prescribes the duties of the driver of the overtaken vehicle is, in our opinion, of no legal significance to the problem before us, and we hold that the instruction given was free of error.

Plaintiff agrees that the charge on this issue (other than the challenged portion which quoted the statute) was correct, but urges that it should have been supplemented by the following:

"And if you find that the defendant should have given audible signal and failed to give such audible signal when he should have given same the same may be considered by you as evidence of negligence on the part of the defendant to be considered with all the other evidence in the case and under the other instructions given."

Plaintiff's timely request to supplement the instruction on audible signal was denied by the trial court, and such denial is now urged by plaintiff as reversible error.

■■ It is patently clear that the requested instruction was given, in substance, and that the essence of what plaintiff requested, by way of supplementation, was actually more comprehensively covered in the instruction given than as requested. This Court, in Honebein et al. v. McDonald, 299 F.2d 493, at page 495 said:

" * * * appellate courts have consistently held that a trial judge may

use his own language in giving instructions to a jury and may not be forced to use the particular verbiage of a requested instruction. (Citations.) If the language used in the instructions adequately, correctly and understandably presents the issues to the jury, then no fault may be found therewith."

Also see: Miller et al. v. Brazel, 10 Cir., 300 F.2d 283, 288.

█ In this instance, the charge given clearly, correctly and adequately stated the substance of the law, and was in accord with the pronouncement of Warren v. Bostock, 170 Neb. 203, 102 N.W.2d 55, in which it was said:

"It is asserted by defendant that plaintiff was negligent in not warning of his intention to pass by sounding his horn. The duty to sound a warning is not an absolute one. Such duty depends largely on the circumstances of the particular case, and whether or not one is negligent in failing to sound a warning before attempting to pass is ordinarily a question for the jury."

█ In his second ground urged in support of his objection to the instruction on this issue of audible signal, plaintiff asserts that the trial court's failure to supplement its instruction given by further instructing as to the provisions of Section 39–774, Nebraska R.R.S.1943, constitutes reversible error.

That Nebraska statute provides, inter alia, that:

"(a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet.; * * *."

No request for such supplementing instruction was made and no suggestion concerning the same, or reference thereto, was made to the trial court at the time counsel was given the opportunity to voice objections to the charge, and no objection was made on the basis or ground of its omission. It is clear, therefore, that this objection is precluded from our consideration by virtue of Rule 51, F.R.Civ.P., which provides, inter alia, as follows:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

We have previously held this rule to have the force and effect of law. See: Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 18; and Mill Owners Mut. Fire Ins. Co. v. Kelly et al., 8 Cir., 141 F.2d 763, 765. Also see: Miller et al. v. Brazel, 10 Cir., 300 F.2d 283, 288; and Barron & Holtzoff, Federal Practice and Procedure, Vol. 2B, Sections 1101 to 1106, inclusive, p. 439 et seq.

In summary we conclude, as to the issue of audible signal, that there was no error in the instruction as given; that the requested supplemental instruction was merely cumulative as to subject matter fully and adequately covered and, therefore, no error exists in the denial of plaintiff's request; and that plaintiff's objections concerning the failure of the trial court to instruct the jury as to the provisions of Section 39–774 were not properly preserved for review.

*Contributory Negligence.*

On the issue of contributory negligence, the jury was instructed as follows:

"Defendant admits all matters about which, as I have above stated, there is no controversy. He denies all other allegations, including the claimed negligence on his part and the claim that the accident was proximately caused by such negligence. He alleges negligence and contributory negligence on the part of plaintiff in failing to decrease the speed of the unit he was driving when he knew, or should have known, that a

special hazard existed with respect to other traffic on the highway."

Then followed instructions explaining that the defense of contributory negligence is affirmative in nature, and that therefore the burden of proving such allegations was upon the defendant. The essential elements of the defense of contributory negligence were summarized, and the law of comparative negligence, obtaining in the State of Nebraska, was explained.

To the submission of the issue of contributory negligence, plaintiff objected in the following language:

"Comes now the plaintiff and respectfully excepts to that portion of the charge which submits to the jury for its consideration the issue of contributory negligence of the plaintiff, it being the position of the plaintiff that no evidence in the record gives rise to the submission of such issue.

"Plaintiff further excepts to any and all portions of the charge that stem from the submission of such issue of contributory negligence or negligence of the plaintiff, including the submission of comparative negligence or any other issue stemming therefrom."

\* \* \* \* \* \*

"Plaintiff further in conjunction with the first exception heretofore taken on contributory negligence specifically excepts to that portion of the charge which submits to the jury the issue of negligence on the part of the plaintiff in failing to decrease the speed of the unit he was driving when he knew or should have known that a special hazard existed with respect to other traffic on the highway, for the reason that plaintiff contends that the evidence fails to show that the plaintiff at any time prior to the onset of the actions of the drivers in the case was ever informed of or had reason to know that any special hazard existed in any time sufficient to affect his actions or conduct thereafter in any form."

\* \* \* \* \* \*

"Comes now the plaintiff then in conjunction with and particularizing upon exception number 1 to the submission of contributory negligence, excepts to that portion of the charge which submits to the jury that portion of section 39–7109 of the revised statutes of Nebraska providing as follows:

'(b) except when overtaking or passing on the right is permitted the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle,'

for the reason that plaintiff contends the record is devoid of any evidence either of an audible signal on the part of the defendant or an increase of speed on the part of the plaintiff."

The quoted exceptions were overruled, and the charge stood as given.

The thrust of plaintiff's argument in support of his claim of error on this issue is directed to two propositions. Plaintiff contends that the trial court erred in instructing the jury, as a matter of law, that a special hazard existed, and that the trial court erred in submitting the issue of contributory negligence to the jury for the reason that there is no evidence in the record to support such claimed defense.

The short answer to plaintiff's first contention is that a reading of the court's instructions plainly shows that the jury was *not* charged, as a matter of law, that a special hazard existed on the highway at the time of the accident. The fact is that the jury was told "(Defendant) *alleges* negligence and contributory negligence on the part of plaintiff in failing to decrease the speed of the unit

he was driving when he knew, or should have known, that a special hazard existed with respect to other traffic on the highway." (Emphasis added.) Later in the instructions, and in accordance with the statutes of the State of Nebraska, the jury was told that "The fact that the speed of a vehicle is lower than the prima facie limits shall not relieve the driver from the duty to decrease speed when special hazards exist with respect to other traffic." We do not read these instructions in the same light as argued by plaintiff. The latter's interpretation or construction of this portion of the charge is patently strained and unreasonable. Clearly, and by unambiguous language, the question of whether or not a special hazard did exist was left for jury determination. It is obvious that, in order for the jury to determine whether plaintiff had the duty to decrease speed because of the existence of a hazard with respect to other traffic on the highway, of which he had knowledge or should have had knowledge, it was necessary for the jury to determine whether, in fact, such a hazard did then exist. This was the clear purport of the court's instruction.

■ In reviewing a trial court's instructions to the jury, to determine whether or not they correctly set forth the applicable law, we are bound to read and consider the charge as a whole. Jiffy Markets, Inc. v. Vogel, 8 Cir., 340 F.2d 495, 500. Read and examined in the light of this rule, we conclude that the jury was correctly informed on this point.

Plaintiff's second contention is that there is no competent evidence in the record to support the defense of contributory negligence, and it was therefore prejudicial error to submit the issue of contributory negligence to the jury.

■ We are in full accord with plaintiff's statement that, " * * * where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is prejudicial error

to submit that issue to the jury." See: Giebelman v. Vap, 176 Neb. 452, 126 N.W.2d 673, 678; Arnold v. Lance, 166 Neb. 834, 90 N.W.2d 814; and Anderson v. Nielsen, 162 Neb. 110, 75 N.W.2d 372, 375. However, in reviewing the evidence (having in mind, of course, that the evidence and the inferences to be drawn therefrom must be considered in the light most favorable to the defendant) we reach the same conclusion that the trial court did in his ruling on plaintiff's motion for new trial (or in the alternative for judgment notwithstanding the verdict). In his unreported memorandum and order overruling said motion, Judge Van Pelt concluded, inter alia:

"As is reflected by the jury's verdict in this case there was evidence from which the jury could determine, and it appears to the court that it did so determine, that plaintiff's version of the incident was not the correct one."

\* \* \* \* \* \*

"If the other cars were traveling at the same rate plaintiff's truck was traveling it is evident, as was argued by defendant's counsel to the jury, that the vehicles were approximately 750 to 800 feet apart when the traffic hazard showed up. From this the jury had a right to conclude that if the hazard was known to defendant who pulled off the highway, the hazard should have been known to the plaintiff and that he should have decreased his speed. Defendant's car traveling at least as fast as plaintiff's vehicle was traveling, traveled 216 feet and came to a stop without collision with anyone. (Plaintiff's) failure to reduce his speed whereby he might have come to a complete stop before the Chevrolet hit his car was thus properly before the jury as a specification of contributory negligence and for their consideration as to the proximate cause of the accident and injuries.

"The court was of opinion at the time, and remains of the opinion, that the contributory negligence of plaintiff was properly submitted to the jury. It is evident that the jury concluded either that plaintiff's contributory negligence barred a recovery or that the proximate cause of the accident was other than negligence on the part of the defendant. In either event a verdict for defendant would be proper."

The record reveals substantial evidence from which the jury, in the exercise of its sound discretion, could have found either that any negligence on the part of defendant " * * * was antecedent negligence which created a condition existing at the time of the collision of the automobiles and was not a proximate cause thereof * * *" (Ricker v. Danner et al., 159 Neb. 675, 68 N.W.2d 338, 342), or that the plaintiff was contributorily negligent in the manner pleaded by defendant and as submitted to the jury, and that such contributory negligence was a proximate cause of the accident. The undisputed physical facts, as testified to by Trooper Karthauser, demonstrate that plaintiff was mistaken as to a portion of his testimony. (See: Hessler v. Bellamy, 128 Neb. 571, 259 N.W. 514.) In view of the conflict appearing in the evidence concerning the issue of contributory negligence of the plaintiff, it cannot be said that reasonable minds could not differ, and such issue was required, therefore, to be submitted to the jury for determination. McQueen v. Navajo Freight Lines, Inc., 8 Cir., 293 F.2d 590, 594; Bell v. Crook, 168 Neb. 685, 97 N.W.2d 352, 368, 74 A.L.R.2d 223.

We concur in the reasoning and the ultimate conclusions of Judge Van Pelt. We are satisfied that the instructions to the jury fully, fairly and correctly stated the applicable law, and are free of error.

The judgment is affirmed.